United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 23, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

---------------

No. 04-30191

---------------

UNITED STATES OF AMERICA

Plaintiff-Appellee

versus

OMAR ALVAREZ CALA

Defendant-Appellant

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:03-CR-50077-ALL

---

Before REAVLEY, JONES, and GARZA, Circuit Judges.

PER CURIAM:[*]

Omar Alvarez Cala ("Alvarez") appeals his conviction and sentence for possessing with the intent to distribute five or more kilograms of cocaine.  Specifically, he argues that: 1) the district court abused its discretion when it excluded evidence of communication problems between him and the interrogating officer; and 2) his sentence is unconstitutional in light of the Supreme Court's decisions in *Blakely v.* Washington, 124 S.Ct. 2531 (2005), and *United States v. Booker*, 125 S.Ct. 738 (2005).

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

# I

Alvarez was driving alone on a Louisiana highway in a car with a Florida license plate. Officer Keith King ("King") stopped his vehicle after receiving a tip from Hank Haynes ("Haynes"), a fellow off-duty officer who noticed that the car was driving slowly and making erratic movements. King observed that Alvarez' hands were shaking, he was sweating profusely, and he did not make eye contact when he spoke. Upon questioning, Alvarez stated that he was coming from Dallas, Texas, that he was on his way to Orlando, Florida and that the car belonged to his girlfriend. Haynes, who was watching this interaction from a distance, noticed that King was having difficulty communicating with Alvarez. As a result, he approached the car and noticed that the dashboard was extremely loose and that the seal around the windshield was wet and tacky. When asked again, Alvarez stated that he was going to Miami, Florida. He then told the officers that he was a runner and that he was moving to a different city in Florida. Haynes testified that he too noticed that Alvarez was extremely nervous, sweating profusely and would not make eye contact with the officers. Haynes spoke with Alvarez using hand gestures and stated that he did not have much difficulty communicating with him because "[h]e could speak more English than he made out to." Nevertheless, the officers contacted Officer Keith Billiot ("Billiot") of the Louisiana Drug Enforcement Administration, in part, because he spoke proficient Spanish.

Officer Billiot interviewed Alvarez in Spanish. Alvarez stated that his name was Omar "Albaref" and that he had received the car from his girlfriend a month earlier. Officer Billiot explained to him that he wanted permission to search his car. Alvarez agreed and voluntarily signed a consent form written in Spanish. The officers brought two drug dogs who alerted them to the dashboard. The officers took the car to a wrecking service for further inspection where they observed

2

that the windshield had been replaced and the tar around it was still sticky and fresh.  The dashboard was removed and the officers discovered six kilograms of cocaine in a hidden compartment between the windshield and the hood of the vehicle.

The officers arrested Alvarez.  They seized a Texas hotel receipt with the name "Omar Albaref" and an Arizona driver's license with the name "Omar Alvarez-Cala."  Officer Billiot questioned Alvarez again.  Alvarez now stated that he was traveling from Phoenix to Orlando and that he had spent the preceding night in Dallas at a hotel.  However, the hotel receipt indicated that he had spent the evening in Lubbock, Texas.  During the interview, Billiot gave Alvarez permission to go to the bathroom.  When the toilet was flushing, Officer Billiot entered the stall and noticed a folded piece of paper with writing on it going down the toilet.  Alvarez initially indicated that he was not aware of the piece of paper.  After further questioning, he stated that the piece of paper was on top of the toilet tank and that he had flushed it.

Three days later, Officer Billiot interrogated Alvarez again on audiotape.  During the interrogation,  Alvarez stated that he received the vehicle from his girlfriend's cousin the day of his departure.  Alvarez also stated that the piece of paper that he flushed down the toilet contained directions for his route from Phoenix to Orlando.

At trial, Alvarez sought to introduce into evidence the audiotape and transcript of Officer Billiot's interrogation.  The government objected and the district court sustained the objection and excluded the tape on hearsay grounds.  Specifically, the court stated that "the offer of the transcript [of the taped interrogation] is simply, from the Court's viewpoint, an attempt to allow the Defendant to get around privilege accorded to him of not testifying and instead substitute that rank hearsay statement for his appearing to testify live before this jury."

The jury found Alvarez guilty of one count of possession with intent to distribute five kilograms or more of cocaine. The district court sentenced him to a term of 121 months in prison.

Alvarez contends that the district court committed reversible error when it refused to allow him to enter the transcript of his interrogation into evidence. He argues that the transcript was not hearsay and that it should have been entered into evidence under Federal Rules of Evidence 106(a) or 611(a). Alvarez also alleges that his sentence is unconstitutional in light of *Booker*.

II

We review the exclusion of evidence at trial for abuse of discretion with a "heightened" review of evidentiary rulings in a criminal case. *United States v. Gutierrez-Farias*, 294 F.3d 657, 662 (5th Cir. 2002). The district court assumed that Alvarez sought to enter the transcript of the tape into evidence *solely* "to substitute that rank hearsay statement for his appearing to testify live." However, at trial Alvarez indicated that the transcript and audiotape would also help establish the "quality of the Spanish being spoken to [him] and the ability for him to understand what's going on." Accordingly, while the district court was correct in not allowing the transcript to be entered into evidence to establish Alvarez' explanation for why he allegedly was unaware of the drugs hidden in his car, it abused its discretion when it excluded the evidence for purpose of establishing a language barrier between Officer Billiot and Alvarez. *See United States v. Cantu*, 876 F.2d 1134, 1137 (5th Cir. 1989) (proffered statements improperly excluded by the district court "were not hearsay because they were offered as evidence of the defendant's state of mind, and their significance was solely in the fact that they were made; the truth of the statements is irrelevant.").[1]

---

[1] Because we find that the district court abused its discretion by excluding the tape and transcript, we refrain from addressing the defendant's alternative argument that the district court erred when it refused to allow the court-appointed interpreter to testify as an expert witness. Alvarez

4

Our inquiry, however, does not end here. If a district court abuses its discretion by admitting or excluding evidence, we must "review the error under the harmless error doctrine, affirming the judgment, unless the ruling affected substantial rights of the complaining party" *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003); FED. R. CRIM. PROC. 52(a). In doing so, we "must consider the other evidence in the case" and determine whether the improperly excluded evidence, if admitted, would have had a "'substantial impact' on the jury's verdict." *United States v. El-Zoubi*, 993 F.2d 442, 446 (5th Cir. 1993) (quoting *United States v. Evans*, 950 F.2d 187, 191 (5th Cir. 1991)).

Alvarez argues that the district court's error impinged on his substantial rights because the government used his inconsistent statements to establish that he knew the drugs were hidden in his car. *See United States v. Delgado*, 256 F.3d 264, 274 (5th Cir.2001) ("The essential elements of possession with the intent to distribute controlled substances in violation of 21 U.S.C. § 841 are 1) *knowledge*, 2) possession, and 3) intent to distribute the controlled substances.") (emphasis added).

In reviewing the record we find that there was extensive evidence of defendant's knowledge of the drugs in his car. Officers Billiot and Haynes both testified as to Alvarez' nervous demeanor and his inconsistent statements during and after the arrest. The jury assessed their credibility. The jury could also have inferred knowledge based on the condition of the car which had a recently replaced windshield, a loose dashboard, and tar that was still sticky and fresh. In addition, while Alvarez claimed that he never sought to conceal his identity and state that his name was "Albaref", he was unable to explain why his hotel receipt contained the name "Omar Albaref."

concedes that the interpreter's testimony would have been "unnecessary" had the translation of the conversation been entered into evidence and that her testimony was only needed to "cure[] the district court's erroneous exclusion of the audio recorded interview and transcript."

More importantly, Alvarez had an opportunity to testify and present his "language barrier" defense. Indeed, a review of his testimony shows that Alvarez spoke extensively about his alleged difficulty in speaking and relating with Officer Billiot in Spanish. Thus, the jury had a chance to assess Alvarez' defense and his credibility. Ultimately, the jury weighed the defendant's and the officers' testimony and concluded that Alvarez' explanation was insufficient to explain the various inconsistent statements such as where he obtained the car, the length of time he had the car, his travel patterns, his destination, and the piece of paper he flushed down the toilet.

We addressed a similar issue in *United States v. Wellendorf*, in which the district court improperly excluded testimony on hearsay grounds. 574 F.2d 1289 (5th Cir. 1978). We held that "[s]ince [the defendant] was able to place his defense before the jury, the fact that the defense was not elicited in the precise manner originally contemplated by the defendant is not a proper basis for reversal." *Id*. at 1290 (citing *United States v. Onori*, 533 F.2d 938, 945-46 (5th Cir. 1976)). *See also United States v. Mejia*, 844 F.2d 209, 215 (5th Cir. 1988) (even if the district court had erred in excluding testimony as hearsay, it was "at most harmless error because it was cumulative of . . . other testimony."). Similarly, Alvarez had a fair opportunity to present his explanation for the conflicting stories he presented to the police during the period of his arrest. The presentation of the transcript and audiotape would have been cumulative at best and would not have changed the jury's decision.

Furthermore, in reviewing the transcript of the interrogation, we see little evidence to support Alvarez' contention that Officer Billiot's Spanish proficiency resulted in his confusion and inability to understand his questions. While the interaction between the two was not necessarily smooth, it is clear that Alvarez was able to understand and provide sufficient answers to all of Officer Billiot's questions. During the interrogation, Alvarez never indicated that he had any trouble comprehending

6

any of the questions being asked or the proceedings in general. The only suggestion of a language barrier occurred when Alvarez suggested that his initial statements to the police were inconsistent because "You [Officer Billiot] started asking questions and questions, you confused me or tricked me, and you tricked me because I have ))." This isolated statement is insufficient to establish an extensive language barrier, especially since Alvarez' allegation seems to focus more on a calculated attempt by the police to "trick" or "confuse" him. Since the transcript reveals that Billiot's ability to converse in Spanish was more than sufficient to conduct a proper interrogation, we see no reason to assume that the jury would have found that there was a language barrier between Billiot and Alvarez during that interview or during their first encounter on the highway three days earlier. Because the exclusion of the audiotape and transcript did not have a substantial impact on the jury's verdict, we find that the district court's error was harmless.

III

Finally, Alvarez argues that his sentence should be reversed because the Supreme Court has held that a mandatory Sentencing Guideline scheme is unconstitutional. *See Booker*, 125 S.Ct. 756-57. Alvarez did not raise this issue until his appeal. As a result , we review his sentence for plain error. *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005), *petition for cert. filed* (March 31, 2005) (No. 04-9517). Under this standard, a defendant's sentence can only be corrected if there is an: 1) error; 2) that is plain; 3) that affects substantial rights; and 4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Cotton*, 535 U.S. 625, 631 (2002). *See also* FED. R. CRIM. P. 52(b).

Alvarez argues that because he was sentenced to a term one month over the minimum sentence required under the Sentencing Guidelines, there is "the possibility of prejudice." However,

7

in *United States v. Mares*, we held that in order to establish reversible plain error under *Booker*, a petitioner has the burden to "demonstrate[] that the sentencing judge)) sentencing under an advisory scheme rather than a mandatory one)) would have reached a significantly different result." 402 F.3d at 521. "[I]f it is equally plausible that the error worked in favor of the defense, the defendant loses; if the effect of the error is uncertain so that we do not know which, if either, side is helped the defendant loses." *Id.* Alvarez' assertion of the "possibility of prejudice" fails to show that the district court would have issued a different sentence under an advisory sentencing scheme.

## IV

For the above stated reasons, we hold that the district court did not commit reversible error and AFFIRM the defendant's conviction and sentence.