United States Court of Appeals
Fifth Circuit

**F I L E D**

October 11, 2006

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

---

No. 05-10341

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRIAN LERON SAM,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas
(3:02-CR-29-ALL-G)

---

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Primarily before us for Brian Leron Sam's bank-robbery conviction are sentencing issues related to his diminished mental capacity. He challenges the sufficiency of the evidence underlying that conviction and the district court's refusal, at sentencing, to grant: a downward departure for his diminished mental capacity; an acceptance-of-responsibility reduction; and his *Blakely* (now *Booker*) objection, concerning application of the Sentencing Guidelines. The court erred only in its downward-departure ruling.

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.**

The facts are not in dispute.  For several years, Sam has suffered from periods of schizophrenia and psychosis.  On 30 January 2002, he entered a bank in Duncansville, Texas, and presented a teller the following note:  "I HAVE A GUN! SILENTLY AND QUICKLY GIVE ME ALL YOUR MONEY".  Before the teller could comply, and while she was reaching into her cash drawer to empty it, Sam reached over the counter and seized money being counted by her and another teller.  Neither attempted to stop the robbery.

After seizing the money, Sam exited, leaving his note behind.  It was written on the back of his disability paperwork, which contained information identifying him to the police.  When apprehended by the police, and after being advised of his rights, he confessed to the robbery.

Sam was subsequently charged with a single count of bank robbery, in violation of 18 U.S.C. § 2113(a).  In July 2002, after a psychological examination was performed pursuant to 18 U.S.C. § 4247(b) and (c), Sam was declared mentally incompetent to stand trial.  In September 2003, after psychiatric treatment, he was declared competent to do so.

At trial in October 2004, Sam conceded each element of the offense but presented a narrow insanity defense through expert medical testimony.  That expert claimed:  although Sam knew his actions were wrong, his mental condition prevented his appreciating

2

the seriousness of their consequences. Sam did *not* move for judgment of acquittal under Federal Rule of Criminal Procedure 29. On 21 October 2004, he was convicted by a jury.

At sentencing in February 2005, Sam objected to the pre-sentence investigation report's recommended sentencing range of 92 to 115 months, claiming: he should be awarded both a downward departure for his diminished mental capacity and an acceptance-of-responsibility reduction; and, pursuant to **Blakely v. Washington**, 542 U.S. 296 (2004), the court's consideration of the Guidelines was impermissible fact-finding. Those objections were denied.

The court held: a downward departure was precluded because Sam's offense was a crime of violence under U.S.S.G. § 5K2.13 (permitting a downward departure for crimes committed as a result of a diminished mental capacity, except where the circumstances surrounding the crime involved violence or a serious threat of violence); his insanity defense was inconsistent with an acceptance-of-responsibility reduction because that defense challenged one of the factual elements the Government had to prove — culpable mental state; and, concerning Sam's **Blakely** objection, although the Supreme Court invalidated the mandatory nature of the Guidelines under its subsequent opinion in **United States v. Booker**, 543 U.S. 220 (2005), "in other respects[, it] left those Guidelines intact".

II.

Sam contests his conviction and sentence. He claims: there was insufficient evidence to convict him under § 2113(a) because, while he may have used force and intimidation, those actions were not the causal link that allowed him to seize the money; the district court erred in failing to grant his requests for both a downward departure based on his diminished capacity and a reduction for acceptance of responsibility; and it erred in overruling his *Blakely* (now *Booker*) objection.

A.

Concerning Sam's conviction, the usual standard of review for a sufficiency-of-the-evidence challenge is to consider the evidence in the light most favorable to the verdict, accepting all reasonable inferences that support it, in deciding whether a rational jury could have found the elements of the offense beyond a reasonable doubt. *United States v. Baker*, 17 F.3d 94, 96 (5th Cir.), *cert. denied*, 513 U.S. 857 (1994). Because Sam failed to move for a judgment of acquittal, however, his claim is reviewed "under a stricter than usual standard". *United States v. Green*, 293 F.3d 886, 895 (5th Cir.), *cert. denied*, 537 U.S. 965 (2002). "[R]eview is [only] for 'a manifest miscarriage of justice,' which is found if the record is 'devoid of evidence pointing to guilt'", *id*. (quoting *United States v. Ruiz*, 860 F.2d 615, 617 (5th Cir. 1988)), or if "the evidence on a key element of the offense was so

4

tenuous that a conviction would be shocking", *Ruiz*, 860 F.2d at 617

(internal quotation omitted).

Section 2113(a) states:

> Whoever, by force and violence, *or by intimidation*, takes or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association, [is guilty of bank robbery].

(Emphasis added.) Because § 2113(a) is written in the disjunctive,

the Government need prove only that Sam took the money by use of

"force and violence" *or* by "intimidation". *United States v.*

*Higdon*, 832 F.2d 312, 314 (5th Cir. 1987), *cert. denied*, 484 U.S.

1075 (1988).

Sam concedes he threatened the first teller and likely

intimidated her by use of his note. He maintains, however, his

threat and intimidation was not the causal link by which he robbed

the bank; because he seized the money, and neither of the two

tellers aided him, his intimidation and threat of force were

extraneous to that seizure. Sam relies exclusively on the first

teller's trial testimony to support his claim. She testified that,

after Sam placed the note in front of her, "I looked at the

[second] teller and the cash drawer, and ... was going to react

because [the second teller] did not, but before I could open the

cash drawer, the money that was on the counter that we were verifying, he reached over and grabbed [it]".

"[F]rom the perspective of the victim, a taking 'by intimidation' under section 2113(a) occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts." *Baker*, 17 F.3d at 96 (quoting *Higdon*, 832 F.2d at 315). Sam's note stated he had a gun. The first teller testified: as soon as she saw that note, she knew the bank was being robbed; she was extremely fearful; she was trained to follow the robber's instructions; and, in doing so, she reached for the cash drawer.

Accordingly, there is evidence that her response resulted directly from Sam's note. It is reasonable to infer that this response permitted, in part, his seizing the money. In other words, there was no manifest miscarriage of justice.

### B.

In challenging his sentence, Sam maintains the court erred in holding: (1) Guidelines § 5K2.13 precludes a downward departure because bank robbery is a crime of violence; (2) his insanity defense precluded an acceptance-of-responsibility reduction; and (3) *Booker* requires, according to Sam, "a specific articulable reason" to depart from the now-advisory Guidelines.

Although *Booker* eliminated the mandatory nature of the Guidelines, "a sentencing court must still carefully consider the

6

detailed statutory scheme created by [the Guidelines]", and should apply them "in the same manner as before [*Booker*]". *United States v. Mares*, 402 F.3d 511, 518-19 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005). While we review a properly calculated Guidelines sentence for reasonableness, we review *de novo* the interpretation and application of the Guidelines. *See **United States v. Villegas***, 404 F.3d 355, 359-61 (5th Cir. 2005).

1.

This court lacks jurisdiction to review a downward-departure denial *unless*, as here, the district court held a mistaken belief that the Guidelines do not give it the authority to depart. *E.g., **United States v. Barrera-Saucedo***, 385 F.3d 533, 535 (5th Cir. 2004), *cert. denied*, 543 U.S. 1080 (2005). Our review is *de novo*. *Id*.

At sentencing, the court correctly stated that, pursuant to Guidelines § 5K2.13, Sam may *not* receive a downward departure "if the facts and circumstances of [his] offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence". Yet, the court went on to state it did not believe a departure was permissible: "The reason that I am forbidden by the Guidelines to grant such a downward departure is that [bank robbery] is a crime of violence, even though there was no overt violence utilized by ... Sam in the commission of this crime". In other words, although the court correctly stated it

7

should consider the facts and circumstances of Sam's crime in ruling on the downward-departure request, it, instead, denied the departure, as a matter of law, because bank robbery is a crime of violence.

Section 5K2.13 states:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

The section further provides, however, that the departure may *not* be granted if "the facts and circumstances of the defendant's offense indicate a need to protect the public because the *offense involved actual violence or a serious threat of violence*". U.S.S.G. § 5K2.13 (emphasis added).

This language resulted from an amendment to § 5K2.13 in its pre-1998 form, which resolved a circuit split on whether § 5K2.13 permitted a departure for a "crime of violence" as defined by the career offender guidelines. § 5K2.13 cmt. n.1 (1998). *Compare* **United States v. Poff**, 926 F.2d 588 (7th Cir.) (en banc) (§ 5K2.13 categorically prohibits a departure for a *crime of violence*), *cert. denied*, 502 U.S. 827 (1991), *with* **United States v. Chatman**, 986 F.2d 1446 (D.C. Cir. 1993) (§ 5K2.13 requires courts to look at all

8

facts and circumstances surrounding a defendant's crime to determine *whether it was non-violent*, permitting a departure). As a result, the district court should have considered the facts and circumstances of Sam's offense to determine whether it involved "actual violence or a serious threat of violence". U.S.S.G. § 5K2.13. As it noted, Sam did *not* use overt violence in robbing the bank.

Although the court correctly stated the standard upon which it should have based its review, it failed to consider all the facts and circumstances of Sam's crime, instead categorically denying the departure because "bank robbery is considered a crime of violence". In sum, the district court erred in failing to perform § 5K2.13's requisite factual inquiry.

2.

Generally, a district court's refusal to grant an acceptance-of-responsibility reduction is a factual finding, given even more deference than review for clear error. *E.g., **United States v. Ragsdale***, 426 F.3d 765, 781 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1405 (2006). When that denial involves an interpretation of the Guidelines, however, it is reviewed *de novo*. **United States v. Charon**, 442 F.3d 881, 886-87 (5th Cir. 2006).

The denial of the requested acceptance-of-responsibility reduction was premised on the court's ruling that, because of his

insanity defense at trial, Sam had *not* accepted responsibility for his criminal conduct.  It concluded:

> [T]he insanity defense asserted by ... Sam at trial really challenges one of the elements of proof that the government has to establish; namely, that ... Sam had a culpable mental state at the time the offense was committed. In essence, an insanity defense says that he lacks the mental capacity to form a culpable mental state, and so that is a challenge to one of the factual elements that the government had to prove at trial.

Guidelines § 3E1.1(a) permits the district court to grant a two-level reduction if the defendant "clearly demonstrates acceptance of responsibility for his offense". U.S.S.G. § 3E1.1(a). Application Note 2 states:

> This adjustment is *not* intended to apply to a defendant who puts the government to its burden of proof at trial *by denying the essential factual elements of guilt* .... Conviction by trial, however, does *not* automatically preclude a defendant from consideration for such a reduction. *In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.*

*Id*. cmt. n.2 (emphasis added).

Sam claims his insanity defense did *not* challenge the factual elements of his offense:  upon arrest, he admitted guilt both orally and in a voluntary written statement; and, at trial, he did *not* move for a judgment of acquittal.  Sam contends that, because bank robbery under § 2113(a) is a general-intent crime, the Government was required only to prove he knew he was taking the

bank's property by force and violence or by intimidation. Maintaining it is possible to claim he is legally insane, without challenging this *mens rea* element of § 2113(a), Sam relies on an Eighth Circuit opinion, **United States v. Barris**, 46 F.3d 33 (8th Cir. 1995), which held an insanity defense "does not *as a matter of law* preclude a reduction for acceptance of responsibility". **Id**. at 35 (emphasis added).

The Government counters that, although Sam conceded the *actus reus* of his crime, his insanity defense was the same as denying he had the culpable *mens rea*. It cites a subsequent First Circuit opinion, **United States v. Gorsuch**, 404 F.3d 543 (1st Cir. 2005), which held a bank-robbery insanity defense precluded an acceptance-of-responsibility reduction. **Gorsuch** held the defendant "denied an essential *factual* element of *guilt* when she asserted at trial that she lacked the capacity to form the *mens rea* ... necessary for the imposition of criminal responsibility". **Id**. at 546 (second emphasis added). **Gorsuch** further opined that **Barris** failed to "explain how a defendant who has contested the government's allegation that she acted with the requisite *mens rea* has not at the same time contested her *factual guilt* and thereby declined to accept responsibility for the charged offense". **Id**. (emphasis added).

11

Consistent with **Gorsuch**, we agree that, generally, an insanity defense precludes an acceptance-of-responsibility reduction. Pursuant to the above-quoted Guidelines § 3E1.1(a) cmt. n.2, we leave open the possibility, however, that in a "rare situation[]" a defendant may assert such a limited insanity defense that he is eligible for the reduction. This is not one of those instances. As discussed *supra*, Sam's expert testified at trial that Sam *could* appreciate the wrongfulness of his actions, just not the seriousness of their consequences. Moreover, Sam's position on appeal undermines his claimed acceptance of responsibility. For the first time on appeal, he challenges the sufficiency of the evidence, claiming the Government failed to prove one of the factual elements of its case – causation. This claim is difficult to reconcile with Sam's contention that he is eligible for a sentencing reduction based on acceptance of responsibility.

In any event, Sam contends Guidelines § 3E1.1(a) allows a sentencing reduction unless a defendant denies an element of the *offense*; however, "guilt", as used in the Guidelines commentary, is a broader term than "offense". Accordingly, we must determine whether sanity is an "essential factual element[] of *guilt*". U.S.S.G. § 3E1.1(a) cmt. n.2 (emphasis added). "Guilty" is defined as "justly liable to or deserving of a penalty", and it is synonymous with "blameworthy". WEBSTER'S NINTH NEW COLLEGE DICTIONARY 542 (1990). This definition is reflected in our criminal justice

12

system: "'Our collective conscience does not allow punishment where it cannot impose blame'". *United States v. Lyons*, 739 F.2d 994, 994-95 (5th Cir.) (quoting *Holloway v. United States*, 148 F.2d 665, 666-67 (D.C. Cir. 1945)), *cert. denied*, 469 U.S. 930 (1984). Significantly, the legal terminology used to refer to one who has committed wrongful acts, but lacks the mental capacity to understand their wrongfulness, is "not guilty by reason of insanity". This "is a judgment that the defendant is not *guilty* because, as a result of his mental condition, he is unable to make an effective choice regarding his behavior". *Id.* at 995 (emphasis in original).

In criminal law, "[t]he presumption of sanity is ... universal in some variety or other, being (at least) a presumption that a defendant has the capacity to form the *mens rea* necessary for a verdict of guilt and the consequent criminal responsibility". *Clark v. Arizona*, 126 S. Ct. 2709, 2729-30 (2006). The insanity defense raises "the kinds of mental differences that overcome the presumption of sanity or capacity and therefore excuse a defendant from customary criminal responsibility". *Id.* at 2731. Sanity became a disputed issue, essential to finding guilt, when Sam challenged the presumption of sanity by raising insanity as an affirmative defense. *See Davis v. United States*, 160 U.S. 469, 486 (1895) (if "presumption [of sanity] were not indulged, the

13

government would always be under the necessity of adducing affirmative evidence of the sanity of an accused").

This interpretation of § 3E1.1(a) is further compelled by our precedent holding affirmative defenses ordinarily challenge factual guilt and therefore make a defendant ineligible for an acceptance-of-responsibility reduction.  In *United States v. Brace*, 145 F.3d 247, 265 (5th Cir.) (en banc), *cert. denied*, 525 U.S. 973 (1998), we held a defendant's assertion of entrapment was a denial of factual guilt and made him ineligible for that reduction because it was a "challenge to criminal intent and thus to culpability".  Similarly, in *United States v. Branch*, 91 F.3d 699, 742 (5th Cir. 1996), *cert. denied*, 520 U.S. 1185 (1997), we affirmed the denial of that reduction for a defendant who contested his factual guilt by claiming he acted in self-defense.  These affirmative defenses are not analogous to the examples in the commentary to § 3E1.1(a) of issues "that [are unrelated] to factual guilt" such as "constitutional challenge[s] to a statute" and "challenge[s] to the applicability of a statute to [the defendant's] conduct".  U.S.S.G. § 3E1.1(a) n.2.  *See also United States v. Fells*, 78 F.3d 168, 171 (5th Cir.) (holding defendant was *not* precluded from receiving acceptance-of-responsibility reduction where he asserted underlying facts did not legally constitute possession under statute and challenged court's venue), *cert. denied*, 519 U.S. 847 (1996).

14

3.

Finally, Sam claims the district court erred in overruling his ***Blakely/Booker*** objection when it stated that, notwithstanding the now-advisory nature of the Guidelines, there was no need to depart from them. According to Sam, this misconstrues ***Booker's*** holding; he claims a district court need not find a specific reason to depart from the Guidelines.

"Even in the discretionary sentencing system established by [***Booker***], a sentencing court *must* still carefully consider the detailed statutory scheme created by [the Guidelines], which are designed to guide the judge toward a fair sentence while avoiding serious sentence disparity." ***Mares***, 402 F.3d at 518-19 (emphasis added). When the district court imposes a sentence falling within a properly calculated Guidelines range, that sentence is presumptively reasonable and "little explanation is required". ***Id***. at 519.

III.

For the foregoing reasons, the conviction is ***AFFIRMED***; the sentence is ***VACATED***; and this matter is ***REMANDED*** for resentencing.

***CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED***

15