# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-31234

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2013

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHN EMERSON TUMA,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

Before STEWART, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

CARL E. STEWART, Chief Judge:

This is an appeal by Defendant-Appellant John Emerson Tuma ("Tuma") who was convicted of various crimes related to his involvement in disposing of untreated wastewater. Tuma appeals both his convictions and sentence. For the reasons provided herein, we AFFIRM.

## FACTS AND PROCEDURAL HISTORY

The Clean Water Act ("CWA") prohibits the discharge of pollutants[1] into the waters of the United States without a permit or in violation of a permit.

---

[1] "Pollutant[s]" for purposes of the CWA are defined in 40 C.F.R. § 122.2 as:

> [D]redged spoil, solid waste, incinerator residue, filter backwash, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials (except those

No. 12-31234

33 U.S.C. § 1311(a). In Louisiana, the Environmental Protection Agency ("EPA") has delegated the authority to issue and implement permits for these discharges to the State. The Louisiana Department of Environmental Quality ("LDEQ") requires entities discharging from wastewater treatment plants to obtain Louisiana Pollutant Discharge Elimination System ("LPDES") permits. The CWA also regulates the discharge of pollutants into sewer systems that discharge directly into sewage treatment plants operated by municipal governments known as publicly owned treatment works ("POTWs"). POTWs must establish pretreatment programs setting requirements for industrial users discharging pollutants into the POTWs. 33 U.S.C. § 1342(b)(8); 40 C.F.R. §§ 403.1–403.20. Any person who knowingly discharges pollutants from a point source[2] into the waters of the United States or to a POTW in violation of the conditions of these permits or without a permit is subject to criminal sanctions. 33 U.S.C. § 1319(c)(2).

Tuma owned Arkla Disposal Services, Inc. ("Arkla"), a wastewater treatment facility in Shreveport, LA. At Arkla, the wastewater was supposed to pass through filtration systems and various tanks as part of its processing and purification before discharge. A series of these treatment and storage tanks were on Arkla's property and Arkla leased four off-site storage tanks. In September 2006, Tuma sold Arkla to CCS Midstream Services ("CCS"). According to his employees, Tuma retained control of Arkla.

---

regulated under the Atomic Energy Act of 1954, as amended (42 U.S.C.2011 et seq.)), heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water.

[2] A "[p]oint source" is defined as "any discernible, confined, and discrete conveyance, including but not limited to, any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, landfill leachate collection system, vessel or other floating craft from which pollutants are or may be discharged." 40 C.F.R. § 122.2.

2

No. 12-31234

Arkla initially accepted only industrial waste, but later obtained authorization to accept and discharge exploration and production waste ("E&P"). Louisiana authorized the plant to discharge to Shreveport's POTW from June 13, 2006 to the end of 2006 and again from July 1, 2007 until March 2, 2008. Arkla's permit set limits on the levels of pH, oil, grease, biochemical oxygen demand, and total suspended solids. It permitted daily discharge only from Tank B-1. The discharge had to be by batch, meaning that a sample would be taken of the water in Tank B-1 in the morning and no additional water could be added after the sample had been taken. The sample would be given to the Pretreatment Office which would approve or disapprove of the batch. Only an approved batch could then be discharged. From December 7, 2006 through June 30, 2007, an LDEQ compliance order authorized Arkla to discharge to the Red River subject to interim effluent discharge limitations contained in the compliance order.

Tank B-1 was filled with clean well or city water, sometimes mixed with unprocessed water, which was sampled, approved, and discharged to the POTW. The facility then discharged from other tanks illegally all day and night without any testing, sampling, or city approval to the POTW and the Red River. The key employees involved in these acts were Wayne Mallet, Todd Cage, and Tuma's son Cody Tuma ("Cody"). These employees followed Tuma's instructions to illegally discharge the water, watch for regulators, bypass monitoring systems, and check the river for pollution. According to the employees' accounts, Tuma ran a sham plant.

In October 2007, Cage and another employee reported allegations of the misconduct to CCS, who opened an internal investigation. CCS determined that when Arkla began accepting E&P waste the volume of wastewater increased significantly and Tuma incentivized this large supply. Arkla had discharged untreated water to keep up with this supply. CCS fired both Tuma

3

and Cody and reported its findings to the EPA, who opened its own investigation.

On February 24, 2011, Tuma was indicted with Cody, and charged with one count of conspiracy in violation of 18 U.S.C. § 371, one count of discharging untreated wastewater without complying with the requirements of the permit issued to Arkla in violation of 33 U.S.C. § 1319(c)(2)(A) and 18 U.S.C. § 2, two counts of discharging without a permit from an outfall at the plant to the Red River in violation of 33 U.S.C. § 1311(a), 1319(c)(2)(A) and 18 U.S.C. § 2, and one count of obstruction of an EPA investigation in violation of 18 U.S.C. §§ 2 and 1505.  Cody entered a guilty plea to one count of a misdemeanor violation for discharging without a permit, and he testified against his father at trial. At trial, Cody, Cage, Mallet, plant employees, city inspectors, contractors, and an EPA engineer testified against Tuma.  The defense presented the testimony of Tuma, a lawyer for Tuma's plant, employees of the lab that tested the B-1 Tank, and an employee of the plant.  The jury convicted Tuma on all counts after an eight-day trial.  The district court denied Tuma's motions for a new trial and to reconsider the verdict.

At Tuma's sentencing, the district court adopted the pre-sentence investigation report ("PSR") with the exception of a four-level enhancement under United States Sentencing Guidelines ("U.S.S.G." or "Guideline") § 2Q1.3(b)(3) for substantial expenditure for clean-up.  The PSR yielded a Guideline range of 51 to 63 months of imprisonment based on a resulting offense level of 24 and a criminal history category I.  The district court sentenced Tuma to the statutory maximum of 60 months for counts one and five and to 36 months for counts two through four, all running concurrently. The district court also sentenced Tuma to a three-year term of supervised release on all counts, running concurrently, a $100,000 fine, and a $500

No. 12-31234

payment to the Crime Victims Fund.  Tuma timely appealed his convictions and sentence.

## DISCUSSION

Tuma raises several constitutional and substantive challenges to his convictions.  He also raises challenges to his sentence on multiple fronts.  We address each claim in turn.

**A. Tuma's Challenges to His Convictions**

Tuma alleges that his constitutional rights were violated by a series of decisions made by the district court.  Specifically, he challenges the district court's decisions to: 1) exclude evidence and testimony related to the lack of environmental harm caused by the discharges and about the plant's process; 2) deny Tuma's Federal Rule of Criminal Procedure 15(a) request to depose the foreign CEO of CCS; and 3) restrict the cross-examination of Cody and exclude certain defense witnesses.   He also claims that the cumulative effect of these alleged errors requires reversal.[3]

*1. Exclusion of Evidence and Testimony*

The district court granted the government's motion in limine and excluded certain evidence from trial.  First, the district court excluded evidence about the lack of environmental harm caused by the discharges because it was irrelevant.[4]  Such evidence was not required to prove any of the offenses and did not support any affirmative defense to the crimes charged.  Second, the district court preliminarily excluded evidence about the plant's operation and processes because it was irrelevant.  Ultimately, the district court allowed

---

[3] Tuma also asserts throughout his brief that these evidentiary decisions violated his constitutional "right to present a defense."  Because he fails to provide any analysis of this claim, it is waived and we need not address it. *United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010).

[4] In a footnote in its order, the district court said that even if evidence of environmental harm were relevant it would be excluded under Federal Rule of Evidence 403.

Tuma to discuss the plant's processes in his testimony.   At trial, Tuma proffered several witnesses, including Charles Tubbs, who would have testified about the lack of environmental harm in an effort to discredit the government's witnesses.   The district court after considering the proffers excluded the testimony.   Tuma challenged the decision to exclude Tubbs in his motion for a new trial, which the district court also denied.

"We review a district court's evidentiary rulings for an abuse of discretion." *United States v. George*, 201 F.3d 370, 372 (5th Cir. 2000). However, any error made in excluding evidence is subject to the harmless error doctrine and "does not necessitate reversal unless it affected the defendant's substantial rights." *United States v. Shows*, 307 F. App'x 818, 823 (5th Cir. 2009) (per curiam) (unpublished) (citing *United States v. Lowery*, 135 F.3d 957, 959 (5th Cir. 1998)).   In assessing any error, we "must consider the other evidence in the case and determine whether the improperly excluded evidence, if admitted, would have had a substantial impact on the jury's verdict." *United States v. Alvarez Cala*, 133 F. App'x 89, 92 (5th Cir. 2005) (per curiam) (unpublished) (internal quotation marks and citation omitted).

We conclude that even if the district court abused its discretion in excluding this evidence, Tuma has not shown that the error affected his substantial rights.   Evidence of environmental harm is not an element of any of the charged offenses nor would the lack of environmental harm absolve Tuma of criminal liability—liability based solely on the act of discharging untreated water.   *See* 33 U.S.C. §§ 1319(c)(2)(A), 1311(a); *Chevron, U.S.A., Inc. v. Yost*, 919 F.2d 27, 30–31 (5th Cir. 1990).   Tuma has not demonstrated that if the evidence were introduced the jury would have chosen to believe him and disbelieve the government's witnesses and find him not guilty.   *See United States v. Garcia-Macias*, 206 F. App'x 376, 377 (5th Cir. 2006) (per curiam) (unpublished) (affirming the district court's judgment because the defendant

No. 12-31234

had failed to demonstrate the jury would have believed her testimony if the evidence was not excluded). Turning to the evidence of the plant's processes, Tuma presented substantial evidence on this to the jury. Any error in excluding this evidence was harmless and did not affect Tuma's substantial rights.

### 2. *Inability to Depose the CEO of CCS*

Tuma sought to have CCS's CEO testify that it had thoroughly inspected Arkla before buying it, found it operational, and continued to operate it. Because Tuma could not subpoena the Canadian CEO, he moved for the issuance of letters rogatory to depose the CEO, pursuant to 28 U.S.C. § 1781(b)(2).[5] Tuma argued that the CEO possessed information relevant to his defense and that it was discoverable. The district court denied this request because it did not find the need to depose the CEO exceptional as required by Federal Rule of Criminal Procedure 15(a).

We review violations of the compulsory process clause de novo, but the defendant must demonstrate the necessity of the witness's testimony. *United States v. Soape*, 169 F.3d 257, 267–68 (5th Cir. 1999). We review a district court's Rule 15(a) decisions for abuse of discretion. *United States v. Allie*, 978 F.2d 1401, 1405 (5th Cir. 1992). Any error committed by the district court in denying a Rule 15(a) motion is subject to a harmless error analysis. *See United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994) (finding any error committed by the district court in making a Rule 15(a) decision harmless). We also review a district court's decision to deny the issuance of letters rogatory

---

[5] 28 U.S.C. § 1781(b)(2) allows courts to issue letters rogatory directly to a foreign tribunal or agency. Letters rogatory are "a formal request from a court in one country to the appropriate judicial authorities in another country that can effectuate service of process" on individuals in that country. *Magness v. Russian Fed'n*, 247 F.3d 609, 614 n.10 (5th Cir. 2001).

for abuse of discretion. *United States v. El-Mezain*, 664 F.3d 467, 517 (5th Cir. 2011).

We hold that there was no violation of Tuma's right to compulsory process. It is well-established that a conviction is constitutional and does not violate a defendant's right to compulsory process even when the court lacks the power to subpoena potential defense witnesses from foreign countries. *United States v. Zabaneh*, 837 F.2d 1249, 1259–60 (5th Cir. 1988).

Further, there was no abuse of the district court's discretion in denying Tuma's request for letters rogatory, which the district court treated as a Rule 15(a) motion.[6] Rule 15(a) provides that a "court may grant the motion [to take a witness's deposition] because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a). The district court did not abuse its considerable discretion in concluding that there were no "exceptional circumstances" in this case. Tuma bears the burden of proof on this issue and he has failed to meet that burden. *See Allie*, 978 F.2d at 1404–05. Tuma made only conclusory allegations that the CEO possessed relevant information to his defense. However, even assuming that the CEO personally possessed this information, the CEO could only demonstrate that CCS believed Arkla was operational in September 2006. The indictment charged continuous misconduct that occurred for more than a year after that point. It was CCS's own internal investigation that eventually led to this indictment. Further, even if there were error by the district court, such error would be harmless as Tuma has not demonstrated that this decision affected his substantial rights.

---

[6] We recognize these have been treated as two separate means for obtaining evidence—the issuance of letters rogatory or a Rule 15(a) deposition—even in criminal cases. *See United States v. Sensi*, 879 F.2d 888, 899 (D.C. Cir. 1989). Neither party raises the issue of whether Rule 15(a)'s exceptional circumstances requirement should apply to the request for issuance of letters rogatory; therefore, we need not address it and assume without deciding that it does.

No. 12-31234

### 3. *Restricted Cross-Examination and Exclusion of Witnesses*

Tuma next argues that the district court violated his right to confront the witnesses against him by limiting his cross-examination of Cody. He argues that he was unable to demonstrate Cody's bias against him and Cody's true motives for testifying. Additionally, Tuma argues he was unable to impeach Cody's stated motives for testifying because the court excluded the testimony of witnesses who could impeach him. For the first time on appeal, Tuma challenges the denial of his motion to reconsider the denial of his motion for a new trial.

The district court limited both Cody's and Tuma's testimony relating to a custody case against Cody's current wife brought by his ex-wife. Specifically, the district court excluded testimony about the particular abuse allegations, but allowed testimony concerning Tuma's refusal to give Cody money to find a lawyer for the custody dispute. The district court excluded a letter the defense sought to introduce that Cody's current wife had written him under Federal Rules of Evidence 403 and 608(b).[7] The district court struck, without any argument from the defense, two defense witnesses, Cody's ex-wife and his current wife, because it believed each would testify about the custody dispute—a domestic matter that had nothing to do with the illegal discharges. On a motion to reconsider the denial of Tuma's motion for a new trial, the defense submitted an affidavit from Cody's ex-wife that she would have testified to facts that allegedly impeached Cody's stated reasons for testifying against Tuma.

We review alleged constitutional violations of the confrontation clause de novo, subject to a harmless error analysis. *United States v. Jimenez*, 464

---

[7] The court determined that its probative value was substantially outweighed by the danger of unfair prejudice, confusion, misleading the jury, and that it was a waste of time as well as an attempt to impeach the witness with extrinsic evidence.

F.3d 555, 558 (5th Cir. 2006).  If there is no constitutional violation, this court reviews any limitation on a defendant's right of cross-examination for abuse of discretion.  *Id.* at 558–59.  We will not find an abuse of discretion unless the limitations were clearly prejudicial.  *El-Mezain*, 664 F.3d at 491.  We review a district court's evidentiary rulings for abuse of discretion subject to a harmless error analysis.  *George*, 201 F.3d at 372.

We examine the trial testimony to determine whether there was a violation of a defendant's right to confront the witnesses against him.  *Jimenez*, 464 F.3d at 559.  The record reflects an extensive cross-examination of Cody.  To the extent the district court excluded testimony about the specifics of the custody case, this does not amount to a violation of Tuma's constitutional rights.  It was well within the district court's discretion to impose this reasonable limit.  *See United States v. Diaz*, 637 F.3d 592, 597 (5th Cir. 2011) (stating that a district court has discretion "to place reasonable limits on a criminal defendant's right to cross-examine a witness based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant" (internal quotation marks and citation omitted)).  Between Tuma and Cody's testimony the jury had sufficient information to appraise Cody's bias and motives to testify against his father.  *See id.* (stating that this court looks into "whether the jury had sufficient information to appraise the bias and motives of the witness" (internal quotation marks and citation omitted)).  The jury knew that there was a custody dispute between Cody and his ex-wife Kristin and that Tuma supported Kristin in the dispute and refused to assist his son.

Further, there was no abuse of discretion by the district court when it did not admit the letter or allow cross-examination on it.  The letter's probative value was outweighed by the danger of unfair prejudice, misleading the jury, and wasting time.  These are appropriate reasons for excluding the letter.  Fed.

R. Evid. 403.  As substantive evidence, it would have been impermissible and as such was properly excluded by the district court.  Fed. R. Evid. 608(b).

Tuma did not object or make any proffer regarding the exclusion of the two defense witnesses at trial; therefore, his claim is reviewable for plain error only.  *United States v. McRae*, 702 F.3d 806, 832 (5th Cir. 2012).  Plain error review involves four prongs: (1) there must be error; (2) it must be clear or obvious; (3) it must have affected defendant's substantial rights; and (4) the court will exercise its discretion and remedy the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 832–33 (quoting *United States v. Delgado*, 672 F.3d 320, 329 (5th Cir. 2012) (en banc) (alterations in original)).  Even assuming the first two prongs of the analysis are satisfied the error did not affect Tuma's substantial rights.  The jury had sufficient information to appraise Cody's bias and motive for testifying against Tuma, which the excluded testimony would have reiterated.  The jury knew of Cody's past and that he had previously made false statements under oath on multiple occasions.  Even if the jury would have discounted Cody's testimony, the other government witnesses confirmed it.  There was no plain error in excluding these witnesses.

Finally, Tuma's appeal of the denial of his motion to reconsider his motion for a new trial raised for the first time in his reply brief is reviewable only if necessary to prevent a miscarriage of justice.  *See United States v. Rodriguez*, 602 F.3d 346, 360 (5th Cir. 2010) ("[O]ur court generally will not consider an issue raised for the first time in a reply brief.").  Given the above analysis, we conclude there was no injustice in the denial of this motion to reconsider.

### 4. *Cumulative Effect of the Alleged Errors*

We have recognized that "the cumulative effect of a series of errors may require reversal, even though a single one of those errors, standing alone,

would not require such a result." *United States v. Villareal*, 324 F.3d 319, 328 (5th Cir. 2003) (citation omitted). "The doctrine justifies reversal only in the unusual case in which synergistic or repetitive error violates the defendant's constitutional right to a fair trial." *United States v. Delgado*, 672 F.3d 320, 344 (5th Cir. 2012) (en banc). Having found at most harmless error by the district court, we decline to apply this doctrine to this case. *See id.*

**B. Tuma's Challenges to His Sentence**

Tuma raises several challenges to his sentence. Specifically, he challenges four provisions of the Guidelines that the district court relied on to enhance his sentence. He also challenges the district court's denial of his request for an evidentiary hearing and the denial of several departures that he sought pursuant to the commentary in the applicable Guidelines' sections. Finally, he challenges the substantive reasonableness of his sentence.

We review legal conclusions made by a district court at sentencing, including the interpretation and application of the Guidelines, de novo. *United States v. Whitfield*, 590 F.3d 325, 365 (5th Cir. 2009). We review for clear error factual determinations by the district court made in applying the Guidelines. *Id.* at 365–66. We also review the district court's determination that a defendant was an organizer or leader for clear error. *United States v. Davis*, 226 F.3d 346, 360 (5th Cir. 2000). We review for abuse of discretion the denial of an evidentiary hearing at sentencing. *United States v. Hass*, 199 F.3d 749, 751 (5th Cir. 1999).

We lack jurisdiction to review the denial of a downward departure unless the district court's denial resulted from a mistaken belief that the Guidelines do not give it authority to depart. *United States v. Sam*, 467 F.3d 857, 861 (5th Cir. 2006). This rule applies to departures found in both Chapter 5, Part K of the Guidelines and in the commentary to the Guidelines. *See id.* (applying the rule to a departure in Chapter 5, Part K); *United States v. Molina*, 490 F. App'x

674, 675 (5th Cir. 2012) (per curiam) (unpublished) (applying the rule to the departures in the commentary of U.S.S.G. § 2M5.2); *United States v. LeBlanc*, 119 F. App'x 654, 656 (5th Cir. 2005) (per curiam) (unpublished) (applying the rule to the departures in the commentary to U.S.S.G. § 2Q1.3). We conclude that Tuma's argument against this rule's application to departures in the commentary is without merit. Departures in Chapter 5, Part K of the Guidelines are specifically identified as policy statements, *see* U.S.S.G. §§ 5K1.1–3.1, and the Guidelines provide that commentary suggesting circumstances that may warrant a departure have the legal significance of policy statements, U.S.S.G. § 1B1.7. Therefore, these are both subject to the jurisdictional rule stated above.

### 1. Enhancement Pursuant to U.S.S.G. § 2Q1.3(b)(4)

The district court applied a four-level increase to Tuma's offense level pursuant to U.S.S.G. § 2Q1.3(b)(4). U.S.S.G. § 2Q1.3(b)(4) provides that "[i]f the offense involved a discharge without a permit or in violation of a permit, increase by 4 levels." U.S.S.G. § 2Q1.3(b)(4). The commentary to this subsection states that "[d]epending upon the nature and quantity of the substance involved and the risk associated with the offense, a departure of up to two levels in either direction may be warranted." *Id.* § 2Q1.3 cmt. n.7. The district court declined to apply the upward departure sought by the government and the two-level downward departure sought by Tuma.

Tuma argues that the district court misapplied the Guideline section and failed to weigh all the relevant factors in its decision. We hold that there was no error by the district court in applying this enhancement to Tuma whose conduct the enhancement plainly encompassed. We lack jurisdiction to review the denial of this departure unless the district court had a mistaken belief that it did not have the authority to make the departure. *See LeBlanc*, 119 F. App'x at 656. Here, the district court clearly considered the departure and chose not

to apply it in light of the quantity of the discharges involved.  Therefore, we will not review the denial of this departure.

### 2. *Enhancement Pursuant to U.S.S.G. § 2Q1.3(b)(1)(A)*

The district court applied a six-level enhancement pursuant to U.S.S.G. § 2Q1.3(b)(1)(A) for ongoing, repetitive, continuous discharge of a pollutant. This Guideline subsection states that "[i]f the offense resulted in an ongoing, continuous, or repetitive discharge, release, or emission of a pollutant into the environment increase by 6 levels; or (B) if the offense otherwise involved a discharge, release, or emission of a pollutant, increase by 4 levels."  U.S.S.G. § 2Q1.3(b)(1).    The commentary addressing this subsection states that it "assumes a discharge or emission into the environment resulting in actual environmental contamination."  U.S.S.G. § 2Q1.3 cmt. n.4.  The commentary also provides for a departure of up to two levels in either direction "[d]epending upon the harm resulting from the emission, release or discharge, the quantity and nature of the substance or pollutant, the duration of the offense and the risk associated with the violation . . . ."  *Id.*  Tuma sought: (1) a downward departure based on the absence of any proof of environmental contamination, or (2) an evidentiary hearing to prove lack of contamination.  The district court denied both requests and imposed the full six-level enhancement.

We have recognized that U.S.S.G. § 2Q1.2(b)(1)(A)[8] assumes environmental harm, allowing for departures based on the degree of harm. *United States v. Goldfaden*, 959 F.2d 1324, 1331 (5th Cir. 1992).  Tuma does not challenge that we also assume contamination for purposes of applying U.S.S.G. § 2Q1.3(b)(1)(A).  In a footnote in his brief, Tuma only preserves his

---

[8] Section 2Q1.2 applies to the "mishandling of hazardous or toxic substances or pesticides; recordkeeping, tampering and falsification; unlawful transportation of hazardous materials in commerce."  Section 2Q1.3 applies to the "mishandling of other environmental pollutants; recordkeeping, tampering, and falsification."  Subsection (b)(1)(A) in both § 2Q1.2 and § 2Q1.3  and the commentary accompanying these sections are identical.

general objection to this rule of law and provides no legal or factual analysis. Therefore, we need not address this argument. *United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010). Instead, Tuma argues that the district court erred by declining to grant the downward departure when there was no evidence of environmental contamination presented to the court. We do not have jurisdiction to review this claim because the district court understood its authority to grant the departure. *See LeBlanc*, 119 F. App'x at 656. The district court considered and evaluated Tuma's arguments as well as the guidance in the commentary.

To the extent Tuma also challenges the application of U.S.S.G. § 2Q1.3(b)(1)(A) to increase his offense level, such arguments are also unavailing. The district court properly applied the enhancement to Tuma. There was evidence of repeated discharges over a significant period of time, constituting "ongoing, continuous, or repetitive" conduct. There was no misapplication or misinterpretation of § 2Q1.3(b)(1)(A) by the district court.

Tuma also argues that the Supreme Court's recent decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), mandates that any fact that increases the defendant's minimum sentence—in Tuma's case the environmental contamination—must be found by a jury.[9] This argument is unavailing. The *Alleyne* decision applies only to facts that increase a statutory mandatory minimum sentence. *Id.* at 2158. The Court specifically cautioned that "[o]ur ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Id.* at 2163 (citation omitted). Tuma's sentence did not expose

---

[9] Tuma first makes this argument in his reply brief and although typically such an argument would be waived, *Alleyne* was decided after the original briefs had been submitted to this court. Therefore, we consider his argument.

him to a mandatory minimum sentence and was well within the sentencing discretion of the district court; therefore, *Alleyne* is inapplicable. *See United States v. Neuner*, No. 12-10915, 2013 WL 3456747, at *3 n.3 (5th Cir. July 10, 2013) (per curiam) (unpublished) (holding *Alleyne* inapplicable because "[u]nlike the statutory framework in Alleyne's mandatory minimum sentence, [defendant's] statutory penalties did not expose him to a mandatory minimum sentence and none was pronounced").

### 3. Denial of Request for Evidentiary Hearing

Tuma argues that the district court erred by refusing to hold an evidentiary hearing at sentencing, particularly on the issue of environmental harm. However, we have recognized that there is no abuse of discretion when a defendant has an opportunity to review the PSR and submit formal objections to it. *United States v. Patten*, 40 F.3d 774, 777 (5th Cir. 1994) (per curiam). Here, Tuma had an opportunity to review the PSR, file extensive formal objections to the enhancements sought by the government, and submit an affidavit from Tubbs concerning the lack of environmental harm. The district court inquired into whether the parties had anything additional to submit or argue at sentencing and Tuma did not. There was no abuse of the district court's discretion in declining to conduct a full evidentiary hearing given these facts.

### 4. Enhancement for Role in the Offense

Tuma next challenges a four-level enhancement the district court applied for his role in the offense. The applicable Guideline provision provides that: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S.S.G. § 3B1.1(a). The commentary provides that: "In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that

involved only three participants but used the unknowing services of many outsiders could be considered extensive." *Id.* § 3B1.1 cmt. n.3.[10]  The district court imposed this enhancement regardless of the number of participants because it found that Tuma's activities were "otherwise extensive."

There was no clear error by the district court in applying this four-level enhancement to Tuma.  We have held that "[i]n deciding whether a scheme was otherwise extensive, the district court *must* take into account all persons involved during the course of the entire offense." *United States v. Ho*, 311 F.3d 589, 611 (5th Cir. 2002) (alteration in original) (internal quotation marks and citation omitted).  This includes taking into account unknowing participants who contributed to the success of the criminal enterprise.  *United States v. Vogel*, 459 Fed. App'x 439, 442 (5th Cir. 2012) (unpublished).  The district court properly focused on the number of people involved in the scheme including the unknowing participants, such as the truck drivers transporting the wastewater and the contractors.  These unknowing participants were essential to the crime; without their participation Tuma's activities could not have happened or continued.

*5. Enhancement for Obstruction of Justice*

Tuma challenges the constitutionality of a two-level increase the district court imposed for obstruction of justice based on Tuma's perjury at trial.  Tuma argues that the application of the enhancement deprives him of his ability to put on a defense and interferes with his right to testify.  However, a criminal defendant cannot argue that increasing his sentence based on his perjury

---

[10] Factors to be considered in applying this enhancement are: "(1) exercise of decision-making authority; (2) nature of participation in the commission of the offense; (3) recruitment of accomplices; (4) claimed right to a larger share of the fruits of the crime; (5) degree of participation in planning or organizing; (6) nature and scope of the illegal activity; and (7) degree of control or authority exercised over others." *United States v. Fullwood*, 342 F.3d 409, 415 (5th Cir. 2003) (citing U.S.S.G. § 3B1.1 cmt. n.4.).

interfered with his right to testify because a defendant's right to testify does not include a right to commit perjury. *United States v. Dunnigan*, 507 U.S. 87, 96–98 (1993). Tuma acknowledges this precedent, briefly argues it was wrongly decided, and writes to preserve the issue. *Dunnigan* forecloses Tuma's argument. *See United States v. Ceballos-Amaya*, 470 F. App'x 254, 263 (5th Cir. 2012) (per curiam) (unpublished) ("[Defendant] acknowledges the Supreme Court's ruling in *Dunnigan* but maintains that the decision was wrongly decided. As such, [defendant's] argument is foreclosed.").

*6. Reasonableness of Sentence*

Finally, Tuma challenges the substantive reasonableness of his sentence. Tuma argues that the district court never explained how the sentencing factors in 18 U.S.C. § 3553 applied to his case. He alleges it mechanically imposed a Guideline sentence, and in doing so, abused its discretion. Addressing the statutory factors, Tuma argues that the district court failed to consider: (1) the lack of environmental harm, which indicates the crimes were less severe; (2) Tuma's tragic past and unblemished life; (3) the sentences of others who have pled guilty to environmental offenses; and (4) the court's own finding that Tuma would not reoffend nor would the public need protection from him.

We review challenges to sentences for reasonableness for abuse of discretion only. *United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir. 2009). This review occurs in two parts. *Id.* First, this court considers whether there was a procedural error made by the district court. *Id.* Procedural errors include "miscalculating or failing to calculate the sentencing range under the Guidelines, treating the Guidelines as mandatory, [or] failing to consider the § 3553(a) factors . . . ." *Id.* (citation omitted). If there is no procedural error, then this court "engages in a substantive review based on the

totality of the circumstances." *Id.* (citations omitted). "[A] sentence within the Guidelines range is presumed reasonable on appeal. *Id.*

We conclude that the district court did not abuse its discretion in this case. First, there was no procedural error. The district court at sentencing noted several times that he had read and considered the "copious briefs," the objections to the PSR, sentencing memorandum, and reply memorandum. The district court stated that it had "studied the provisions of 3553(a)" and its factors at sentencing. Because of the district court's reference to the arguments made in the briefs and sentencing memorandum, we look to these documents to determine if they provide adequate information about the factors the district court considered and whether the district court's reasons were adequate. *See United States v. Bonilla*, 524 F.3d 647, 658 (5th Cir. 2008). These documents include arguments by both sides on the § 3553(a) factors and each factor's application, providing clarification on what the court considered at sentencing. By examining the record in full, the district court's reasons for the chosen sentence are clear and this court can review them. We conclude that there is no procedural error here.

Finding no procedural error, we next consider the substantive reasonableness of Tuma's sentence. Because the sentence was within the Guideline range it is presumed substantively reasonable. *United States v. Diaz Sanchez*, 714 F.3d 289, 295 (5th Cir. 2013). Tuma has not rebutted this presumption with evidence that the district court improperly considered a factor, failed to take into account a factor, or made a clear error in balancing the factors. *See id.* ("The presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." (internal quotation marks and citation omitted)). The government persuasively

demonstrates that the nature and circumstances of the offense were serious, Tuma's history and personal resolve were not unique, and the sentencing disparities alleged by Tuma were warranted by a factual comparison of the defendants. Given these facts, the district court did not abuse its discretion in weighing the factors and applying a presumptively reasonable within-the-Guidelines sentence.

## CONCLUSION

For the aforementioned reasons, we AFFIRM Tuma's convictions and sentence.