United States Court of Appeals
Fifth Circuit

**F I L E D**

June 15, 2005

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-50196

UNITED STATES OF AMERICA,

Plaintiff-Appellee

versus

ROMAN GERARDO REA-TAPIA

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
(No. 2:03-CR-75-1)

Before WIENER, DeMOSS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Roman Gerardo Rea-Tapia appeals the district court's inclusion of two prior convictions in the calculation of his criminal history score and also challenges the district court's disposition of his motion for recusal. We affirm.

In January 2003, Rea-Tapia pleaded guilty to two marijuana-related charges. Rea-Tapia's presentence report recommended a six-point increase in his criminal history score, from zero to six points, based on two prior federal misdemeanor convictions in 1994

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and 2001, respectively, also based on guilty pleas. These six points increased Rea-Tapia's sentencing range from 37-46 months to 46-57 months under the U.S. Sentencing Guidelines. Rea-Tapia objected to the increase, arguing that use of the prior convictions against him would violate the Sixth Amendment, because he had not validly waived counsel in either case. Rea-Tapia also asked the district judge, Judge Ludlum, to recuse herself from his case, because she had been an Assistant United States Attorney ("AUSA") in the office that had prosecuted one of his prior offenses. Rea-Tapia acknowledged that Judge Ludlum had not participated in his prior prosecution but asked that she recuse herself to avoid even the appearance of impropriety.

Judge Ludlum denied Rea-Tapia's request but selected another district judge, Senior Judge Justice, to rule on Rea-Tapia's sentencing objections before Judge Ludlum sentenced him. Rea-Tapia asked Judge Ludlum to reconsider her order and to transfer the case completely to another district judge; however, she denied Rea-Tapia's motion, noting that case law did not require her to recuse herself but that she had chosen to transfer just the question of Rea-Tapia's prior convictions to avoid any appearance of impropriety.

After the sentencing objections were transferred to him, Judge Justice overruled them. He concluded that, even though Rea-Tapia may not have received the advice required by the Supreme Court before he sacrificed his right to counsel in 1994 and 2001, there

2

had been no complete miscarriage of justice. Judge Justice then transferred the case back to Judge Ludlum, who included Rea-Tapia's two prior convictions in his criminal history score and sentenced him to 48 months in prison and three years of supervised release on each of the two counts, to run concurrently.

1.  Recusal

Rea-Tapia argues that, even if Judge Ludlum was not required to recuse herself, she effectively did so by transferring his case "to avoid even the appearance of impropriety," the grounds for recusal under 28 U.S.C. § 455(a). Rea-Tapia contends that, once recused, Judge Ludlum failed to follow proper recusal procedures, including abstaining from entering any further orders in the case,[1] and improperly choosing her successor judge rather than allowing the case to be reassigned randomly.[2] The government asserts that, as Judge Ludlum was not required to recuse herself, her order transferring a portion of Rea's sentencing to another judge in the same division was merely an exercise of her discretionary authority

---

[1] See United States v. O'Keefe, 128 F.3d 885, 891 (5th Cir. 1997)("Once a judge recuses himself from a case, the judge may take no action other than the ministerial acts necessary to transfer the case to another judge, even when recusal is improvidently decided.").

[2] See McCuin v. Tex. Power & Light Co., 714 F.2d 1255, 1261 (5th Cir. 1983)(holding that, once recused, a judge may not select his successor because to do so would "violate the congressional command that the disqualified judge be removed from all participation in the case," and could also further compound the appearance of impropriety by "creat[ing] suspicion that the disqualified judge will select a successor whose views are consonant with his.").

to transfer a case.

On this record, Judge Ludlum was not required to recuse herself, either for actual or perceived bias.  Section 455(b) does not require judges who formerly served as AUSAs in a division that had prosecuted a defendant to recuse themselves if they did not actually participate in the case.[3]  Even under § 455(a), which requires judges to recuse themselves when there could be an appearance of impropriety, there was no basis for Judge Ludlum to recuse herself as she had no involvement in or knowledge of Rea-Tapia's prior conviction.[4]

We need not decide whether Judge Ludlum's transfer of a part of the defendant's sentencing to Judge Justice actually constituted recusal rather than an ordinary transfer, however, because her actions in transferring the case to Judge Justice for a limited purpose and then sentencing the defendant after Judge Justice had ruled on the defendant's sentencing objections and returned the case were harmless, if error at all.[5]  If a judge recuses himself but wrongly takes further action in a case, we examine such further actions to determine whether they pose "(1) [a] risk of injustice

---

[3] Mangum v. Hargett, 67 F.3d 80, 83 (5th Cir. 1995).

[4] See United States v. Di Pasquale, 864 F.2d 271, 279 (3d Cir. 1988).

[5] Although Judge Ludlum was not required to recuse herself, if she had done so anyway, she would not have been permitted to enter any orders after granting the defendant's recusal motion. See Doddy v. Oxy USA, 101 F.3d 448, 458 (5th Cir. 1996).

4

to the parties in the particular case, (2) [a] risk that the denial of relief will produce injustice in other cases, and (3) [a] risk of undermining the public's confidence in the judicial process."[6]

There was no perceivable risk of injustice to Rea-Tapia, as Judge Ludlum was not required to recuse herself and Rea-Tapia does not argue that she was actually partial or biased.[7]  The standard of review also protects Rea-Tapia's interests: We review de novo[8] the ultimate issue in this appeal — whether Rea-Tapia's prior convictions should have been counted in his criminal history score — which guarantees Rea-Tapia "a fair, impartial review of the merits of the ruling."[9]

Neither is there a perceivable risk that our decision not to vacate Judge Ludlum's orders will result in injustice in future cases.  As § 455 did not require Judge Ludlum to recuse herself, our refusal to vacate in this case is in no way a signal to

---

[6] Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 (1988); O'Keefe, 128 F.3d at 892.

[7] See Doddy, 101 F.3d at 458 (refusing to vacate post-recusal order because, inter alia, the parties had produced no evidence that the judge had any particular interest in the outcome of the case, that she appeared partial, or that she was actually biased or prejudiced).

[8] United States v. Valdez-Valdez, 143 F.3d 196, 197-98 (5th Cir. 1998).

[9] Patterson v. Mobil Oil Corp., 335 F.3d 476, 485-86 (5th Cir. 2003).

district courts that we are unwilling to enforce § 455.[10]

Finally, we have no fear that our ruling today could undermine the public's confidence in the judicial process. We are not concerned that Judge Ludlum's directed transfer to Judge Justice exacerbated an appearance of bias as there is no suggestion that any bias existed. And, as the government points out, Judge Justice was the only other judge hearing cases in the Del Rio Division, so there was no cherry picking of transferee judges. Given our ultimate de novo review of Rea-Tapia's challenges, the lack of any real appearance of impropriety or bias on the part of Judge Ludlum, and the fact that vacating Judge Ludlum's orders when we review de novo whether the outcome was correct would be a waste of time and judicial resources,[11] Judge Ludlum's orders, even if entered post-recusal, were harmless and created neither prejudice to the defendant nor damage to the reputation of the justice system.

2. Uncounseled Prior Convictions

We determine whether the sentencing guidelines apply to a prior conviction de novo, and we review the district court's factual findings for clear error.[12] The ultimate question whether

_____

[10] See Liljeberg, 486 U.S. at 868 (noting that risk of injustice in future cases should be examined according to whether the Court of Appeals is willing to enforce § 455).

[11] See Doddy, 101 F.3d at 459 ("[O]verturning the many decisions Judge Harmon made after vacating her recusal order — simply because she recused herself too hastily and in error — would be wasteful and unnecessary.").

[12] Valdez-Valdez, 143 F.3d at 197-98.

Rea-Tapia knowingly and voluntarily waived his right to counsel is also a legal one, which we review de novo.[13]

The district court (Judge Justice) erred, first, by analyzing Rea-Tapia's claim as if he were a habeas petitioner collaterally attacking a prior conviction under Federal Rule of Criminal Procedure 11. Under this standard, Rea-Tapia would have had to demonstrate that the prior plea proceedings were either infected by a complete miscarriage of justice caused by a constitutional violation or inconsistent with the basic demands of fair procedure.[14] As the proceeding took place in direct criminal sentencing and not in habeas corpus, however, Rea-Tapia was only required to show by a preponderance of the evidence that his prior convictions were uncounseled.[15]

The district court also erred in its determination that Rea-Tapia's prior convictions were in fact uncounseled. It is apparent that the magistrates who conducted Rea-Tapia's 1994 and 2001 plea colloquies fulfilled their duties by informing him "of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishment attendant upon

---

[13] United States v. Bethurum, 343 F.3d 712, 717 (5th Cir. 2003).

[14] United States v. Timmreck, 441 U.S. 780, 783-84 (1979).

[15] See United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005); United States v. Barlow, 17 F.3d 85, 89 (5th Cir. 1994).

7

the entry of a guilty plea."[16]  The factors we consider in assessing the voluntariness of a waiver of counsel, including the defendant's background, age, experience,[17] and the straight-forwardness of the charge,[18] also weigh in favor of finding that Rea-Tapia's waiver was voluntary.  In 1994, Rea-Tapia was 38 years old and had three prior convictions, one of which was for the same crime with which he was charged; in 2001 he was 45 with four prior convictions.  At both proceedings, he faced sentencing for commission of a relatively straightforward crime (illegal entry) carrying a correspondingly brief sentence (180 days in prison).

We recognize that Rea-Tapia's conversation with his translator prior to his 1994 plea colloquy —— in which the translator advised Rea-Tapia that, if he requested a court-appointed attorney, he would have to wait in jail until an attorney was appointed and could post bond —— was improper.  Despite this inappropriate exchange, we conclude that, under these circumstances, Rea-Tapia's 1994 waiver of counsel was not so infected as to negate its voluntariness.

Inclusion of Rea-Tapia's two prior convictions in his criminal history score was appropriate.  The district court's rulings are, in all respects,

---

[16] See Iowa v. Tovar, 541 U.S. 77, 81 (2004).

[17] See United States v. Joseph, 333 F.3d 587, 590 (5th Cir. 2003).

[18] Tovar, 541 U.S. at 88.

8

AFFIRMED.[19]

---

[19] We note that Rea-Tapia does not challenge his sentencing under the United States Sentencing Guidelines or the use of his prior convictions to enhance his sentence, under United States v. Booker, 125 S.Ct. 738 (2005). Thus, any potential Booker challenges are waived.