## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10614

United States Court of Appeals
Fifth Circuit

**FILED**

July 6, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DEREK RAY LACKEY,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:13-CR-287

Before DENNIS, PRADO, and HIGGINSON, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:*

Derek Ray Lackey pleaded guilty to being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). The sole issue on appeal is whether the district court erred in increasing Lackey's offense level by two points for "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," pursuant to U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3C1.2.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 14-10614

For the following reasons, we VACATE Lackey's sentence and REMAND to the district court for resentencing.

## I.

At Lackey's sentencing hearing, the Government presented testimony from Special Agent Amanda Short of the Bureau of Alcohol, Tobacco, Firearms and Explosives to support its argument that the district court should impose a two-level offense enhancement under U.S.S.G. § 3C1.2, for recklessly creating a substantial risk of death or serious bodily injury while fleeing from law enforcement officers. Agent Short was the case agent assigned to Lackey's case and, although not present for the events leading up to Lackey's arrest, she had spoken to the three officers involved.[1] Agent Short relayed to the district court that on October 22, 2012, a security guard at an apartment complex located at 8200 Fair Oaks Crossing in Dallas, Texas, flagged down Dallas police officers and informed them that gunshots had been fired from a white Toyota pick-up truck near the apartment complex. Upon returning to their police cars, the officers noticed Lackey's vehicle pass, which matched the description provided by the security guard.

Three officers in two marked police vehicles began to follow Lackey's truck as he drove north on Fair Oaks Crossing. Lackey drove for a short distance[2] until he reached 8400 Fair Oaks Crossing, where the road intersects with Royal Lane (hereinafter "the intersection"). At the intersection, Lackey lawfully made a right-hand turn onto Royal Lane. Agent Short stated that

---

[1] The Government did not offer the testimony of the officers actually involved in Lackey's arrest.

[2] As noted, the Dallas Officers were flagged down at 8200 Fair Oaks Crossing, where they first noticed and began to follow Lackey's vehicle. The officers followed Lackey as he drove northbound from 8200 Fair Oaks Crossing to the intersection at 8400 Fair Oaks Crossing.

2

No. 14-10614

Lackey maintained a speed of approximately 30 miles per hour in this residential area with a 35-mile-per-hour speed limit.

After turning right onto Royal Lane, Lackey drove east before making a lawful U-turn at one of the first opportunities to do so, and then proceeded west on Royal Lane, back towards the intersection, for approximately 300 feet. As Lackey neared the intersection for the second time, he drove in the far right-hand lane, which was temporarily blocked off due to ongoing construction in the area.[3] When he arrived at the intersection, Lackey made a right turn onto Fair Oaks Crossing while the traffic light was red, without coming to a complete stop.[4] After turning right, Lackey pulled into the parking lot of an apartment complex located at 8401 Fair Oaks Crossing, which is immediately north of the intersection, and stopped his vehicle. Agent Short indicated that Lackey entered the parking lot at the second-available left-hand turn into the apartment complex.

The police report recounts that officers "attempted to stop the vehicle" at the intersection but the parties dispute, and Agent Short was unable to clarify, whether the officers "attempted to stop" Lackey when he first turned right onto Royal Lane, before making a U-turn, or the second time he drove through the intersection, moments before he pulled into the parking lot at 8401 Fair Oaks Crossing. Agent Short affirmed that she did not know when the officers

---

[3] Agent Short affirmed only that there was a temporary barrier of some sort on Royal Lane at the time and she could not say whether there was any damage done to the barrier as a result of Lackey's path. There is no record evidence that Lackey's route through the right-hand lane was dangerous in any manner, nor is there any indication that he was cited for this conduct or that it was unlawful.

[4] Agent Short and the PSR characterized this conduct as "running" a red light, but the police report indicates only that Lackey's vehicle turned northbound on Fair Oaks Crossing "without coming to a complete stop at the red light." Indeed, at the sentencing hearing, Agent Short affirmed that Lackey simply "didn't make a complete stop."

activated their lights and that she did not know when Lackey became aware that he was being followed by law enforcement officers.

Once Lackey stopped in the parking lot, his passenger exited the vehicle, dropped a firearm, and fled on foot towards a nearby creek, escaping police apprehension. Lackey, however, never attempted to flee. Lackey was then placed under arrest as the officers searched his vehicle. During the search, police found a small vial containing a "personal use" amount of PCP, a firearm magazine holding eleven rounds of ammunition that did not match the pistol dropped by Lackey's passenger, as well as masks, bandanas, and hoods with eye-holes.

After hearing Agent Short's testimony and the parties' arguments, the district court overruled Lackey's objection to the § 3C1.2 enhancement, characterizing the issue as a "close call." With the two-level offense increase under § 3C1.2, the Guidelines range was calculated as 46 to 57 months. The district court sentenced Lackey to 52 months in prison, followed by a three-year term of supervised release. Lackey timely appealed his sentence.

## II.

We review a district court's factual finding that a defendant acted recklessly for purposes of § 3C1.2 for clear error. *See, e.g.*, *United States v. Lugman*, 130 F.3d 113, 115–16 (5th Cir. 1997). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Jimenez*, 323 F.3d 320, 322–23 (5th Cir. 2003) (quoting *United States v. Duncan*, 191 F.3d 569, 575 (5th Cir. 1999)).

## III.

Pursuant to U.S.S.G. § 3C1.2, "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," the district court may

No. 14-10614

increase the offense level by two. "In order to establish that the defendant's sentence should be enhanced under § 3C1.2, the government must show that the defendant (1) recklessly, (2) created a substantial risk of death or serious bodily injury, (3) to another person, (4) in the course of fleeing from a law enforcement officer, (5) and that this conduct occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."[5] *United States v. Southerland*, 405 F.3d 263, 268 (5th Cir. 2005) (emphasis and internal quotation marks omitted). "Recklessness" is defined as "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." *See* U.S.S.G. § 2A1.4 cmt. n.1; U.S.S.G. § 3C1.2 cmt. n.2.

For a district court to impose an enhancement under § 3C1.2, the record must contain evidence beyond the mere fact of a suspect's instinctive flight, from which a court plausibly may find that the defendant, during flight from law enforcement officers, acted in a manner that recklessly created a substantial risk of death or serious bodily injury. *See United States v. Gould*, 529 F.3d 274, 277–78 (5th Cir. 2008) (holding that an armed pursuit by officers alone does not justify an enhancement under § 3C1.2). Although the vast majority of our cases upholding enhancements under § 3C1.2 involve evidence that defendants engaged officers in a high-speed car chase or other exceedingly dangerous conduct during flight,[6] "we have not limited the application of the

---

[5] On appeal, Lackey argues that none of the five prongs were met. Here, because we conclude that the record does not plausibly support the district court's finding of a reckless creation of a substantial risk of death or serious bodily injury to another person, we need not address the remaining elements.

[6] *See, e.g.*, *Jimenez*, 323 F.3d at 321 (upholding an enhancement under § 3C1.2 where the defendant led police on a high-speed car chase for "approximately three quarters of a mile

enhancement to situations resulting in actual harm or manifesting extremely dangerous conduct by a defendant." *See Jimenez,* 323 F.3d at 323. Likewise, we do not limit application of the enhancement to those defendants whose conduct during flight actually results in physical harm to others.[7] *Id.* at 324 (reasoning that a finding of recklessness is not "undercut by the mere fortuity that actual harm to persons or property did not result"). Rather, our inquiry is fact-intensive and is focused upon the defendant's behavior during flight and whether the defendant is "aware that his conduct creates a risk [of death or serious bodily injury] of such a nature and degree that to disregard that risk grossly deviates from the standard of care a reasonable person would exercise under similar circumstances." *Id.*

Here, during this brief, below-speed-limit pursuit, the only evidence of "recklessness" borne out by the record is Lackey's failure to come to a complete stop before making a right turn at a red light, shortly before he pulled into the

---

through both business and residential areas," and after stopping his vehicle "fled from the officers on foot"); *see also United States v. Nino*, 482 F. App'x 920, 921–22 (5th Cir. 2012) (per curiam) (upholding the enhancement where the defendant, while carrying nine people in the bed of a pickup truck, led police on a high-speed chase on the highway before entering a residential neighborhood, "making two turns in rapid succession at a high rate of speed and running a stop sign"); *United States v. Delgado*, 302 F. App'x 256, 257 (5th Cir. 2008) (per curiam) (upholding a finding of recklessness where the defendant led "officers on an eight-mile high speed chase at night along Interstate 35 through downtown Fort Worth, Texas"); *United States v. Morante*, 280 F. App'x 431, 432 (5th Cir. 2008) (per curiam) (upholding enhancement where "Morante's car was traveling at a 'high rate of speed,' [] his car 'spun out of control,' [] he hit a parked car belonging to a resident, and[], as a result of the chase, the passenger in his car was killed"); *United States v. Thompson*, 166 F.3d 341, at *2 (5th Cir. 1998) (unpublished) (per curiam) (upholding the enhancement where defendants "traveled down a one way street into oncoming traffic and ran several stop signs while the police gave chase").

[7] *See, e.g.*, *United States v. Bardell*, 294 F. App'x 881, 881 (5th Cir. 2008) (per curiam) (upholding the enhancement where the defendant "thr[ew] a loaded gun behind a bar where people were standing"); *United States v. Villanueva*, 69 F. App'x 657, at *1 (5th Cir. 2003) (per curiam) (upholding the enhancement where the defendant "thr[ew] . . . a bag containing methamphetamine onto a public sidewalk while fleeing from police" because "anyone, including a child, could have picked up the methamphetamine and ingested it").

parking lot where he stopped the vehicle and submitted to arrest without incident. Although the Government appears to impute recklessness to Lackey's U-turn and passage through a construction area, the testimony of Agent Short—which recounts the observations of the officers actually involved in the pursuit—makes clear that the only traffic infraction committed by Lackey was his failure to come to a complete stop at the red light. Moreover, there is no indication in the record that Lackey was cited for evading arrest or that he ever resisted arrest. Rather, Agent Short agreed that there is no evidence that Lackey ever "act[ed] dangerously or obstructive or in a bad way" once he stopped the vehicle and was placed under arrest.

Further, the record is ambiguous as to when Lackey became aware that officers were following his vehicle and suggests that officers may not have activated their lights until just moments before Lackey pulled his vehicle into a nearby parking lot and submitted to arrest. Indeed, Agent Short summarized the incident by testifying that the officers "just followed [Lackey's vehicle] for [a] half mile until it came to a stop" and was unable to testify either as to when officers activated their lights or as to when, or whether, Lackey was aware that officers were following him. Additionally, although the pursuit and the red-light traffic violation occurred in a residential area, there is no evidence whatsoever showing that the area was populated with other drivers or pedestrians at 1:30 am, when the incident took place.[8] Lastly, while visibility may generally be an issue at 1:30 am, the defense exhibits introduced at sentencing indicate that there was at least one streetlight at the intersection where Lackey failed to come to a complete stop.

---

[8] Agent Short testified only that Royal Lane—which Lackey traveled on for approximately 600 feet total (300 feet in each direction)—was generally "busy." However, Agent Short was unaware of the typical traffic patterns on Royal Lane at 1:30 am.

No. 14-10614

Reviewing the current record as a whole, we cannot conclude that the approximately half-mile, 30-mile-per-hour pursuit, involving one minor traffic violation that occurred at 1:30 am, moments before Lackey stopped his vehicle and submitted to arrest,[9] plausibly supports the district court's finding that Lackey *recklessly* created a *substantial risk* of death or serious bodily harm. In other contexts, we have explained that "a substantial risk requires a *strong probability* that the event . . . will occur." *Rodriguez v. Holder*, 705 F.3d 207, 213 (5th Cir. 2013) (emphasis added); *accord United States v. Gomez-Cortez*, 34 F. App'x 152, at *2 (5th Cir. 2002) (per curiam) (describing a "substantial" risk as a risk that is "material" and "real"). Driving well within the speed limit for approximately a half-mile before ultimately stopping and cooperating with officers, but failing to come to a complete stop at a red light before pulling over into a nearby parking lot, does not recklessly create a "strong probability" that death or serious bodily injury will result, nor does this conduct amount to a "gross deviation" from the standard of care a reasonable person would exercise under similar circumstances. Indeed, Lackey's behavior is significantly less dangerous than the behavior of the defendant in *Gould*—who ran from armed police officers after they drew their weapons and continued his flight until officers physically stopped and captured him[10]—and we nonetheless held that

---

[9] As explained *supra*, the traffic violation occurred when Lackey turned right on red at the intersection at 8400 Fair Oaks Crossing, immediately before he pulled into the apartment complex at 8401 Fair Oaks Crossing, just north of the intersection.

[10] In *Gould*, we found that although there was evidence of an armed pursuit involving multiple officers, the record lacked any evidence regarding, for example, "how far [the defendant] ran, . . . [the] description of the area where the chase occurred . . . [or whether the defendant] heard the officers order him to stop or that he reacted in a threatening way or made any threatening actions toward the officers as he ran." *Gould*, 529 F.3d at 277. Rejecting the Government's argument that an armed foot chase alone was sufficient to justify the enhancement, we concluded that the "record is too sparse for us to determine whether [the defendant] was reckless." *Id.* at 277–78.

the district court there clearly erred in finding that Gould recklessly created a substantial risk of death or serious bodily injury. *Gould*, 529 F.3d at 275–76.

Clear error review is highly deferential, but it of course does not render unreviewable the district court's finding that Lackey recklessly created a substantial risk of death or serious bodily injury. *See United States v. Sanders*, 343 F.3d 511, 528 (5th Cir. 2003) ("We realize that clear error is a deferential standard of review; however, it is more than a rubber stamp."). Here, the district court clearly erred in imposing the two-level enhancement under § 3C1.2 because, based on the current record as a whole, we cannot find that it was plausible to conclude that Lackey recklessly created a substantial risk of death or serious bodily injury during flight.

**CONCLUSION**

For these reasons, we VACATE Lackey's sentence and REMAND for resentencing. On remand, "[a]dditional relevant evidence of the flight is admissible on resentencing if the Government has any to offer." *Gould*, 529 F.3d at 278.

No. 14-10614

STEPHEN A. HIGGINSON, Circuit Judge, dissenting:

I would not disturb the district court's factual finding that Lackey's conduct amounted to reckless endangerment during flight, *see United States v. Lugman*, 130 F.3d 113, 115 (5th Cir. 1997), above all where he ran a red light on a busy street in a residential area at night. Reviewing the record as a whole, I am not left with a "definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602, 622 (1993) (internal quotation marks and citation omitted).