# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 24-30364

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

August 26, 2025

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Reginald Humbles,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CR-139-1

———————————————————————

Before Stewart, Clement, and Wilson, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

A few days after being released from a psychiatric hold, Reginald Humbles drove to New Orleans, Louisiana, ran out of gas, and allegedly received a message from God to take a waste disposal truck. Humbles took the truck after brandishing his firearm and engaged in a police chase across the Lake Pontchartrain Causeway and I-12 that ended when he drove over spike strips and punctured the truck's tires.

Humbles pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court

sentenced Humbles to 92 months of imprisonment. Humbles raises five issues on appeal: whether the district court erred by cross-referencing to the robbery Sentencing Guideline; whether the district court erred in denying Humbles's motion for a downward variance and departure; whether the district court erred in applying a Guidelines enhancement for reckless endangerment; whether the district court erred in applying one criminal history point for Humbles's uncounseled misdemeanor conviction; and whether the case should be reassigned to a different judge on remand. Because we do not find reversible error, we AFFIRM the judgment of the district court and DENY Humbles's request to reassign the case.

## I.

## A.

On December 20, 2020, Humbles—a U.S. Army veteran—was arrested for an altercation with his pastor and detained in a hospital in Lafayette, Louisiana on a psychiatric hold. Following his release, Humbles allegedly received an instruction from God to find people to celebrate December 27 with, so on that day, he left Lafayette and drove down the interstate with no wallet, about $5, a half tank of gas, and a gun. Humbles ran out of gas in New Orleans between 11 p.m. and midnight and then started walking around downtown.

On December 28, 2020, around 3:09 a.m., D.J., an employee with Event Restrooms, drove a waste removal truck into the parking lot of 2 Canal Street in New Orleans. D.J. exited the truck, leaving it running with the key in the ignition, and used a hose connected to the truck to remove waste from a bank of portable restrooms. While D.J. emptied the portable restrooms, Humbles noticed the truck and allegedly received a message from God to take the truck. When D.J. went to return the hose to the truck, he felt it move. D.J. walked to the cab of the truck and found Humbles sitting in the driver's

seat. Humbles flashed his gun when D.J. tried to enter the cab. D.J. then asked Humbles to return his personal items and Humbles obliged. D.J. also taught Humbles how to operate the truck, but when D.J. tried to return the hose to the back of the truck, Humbles said "I'm going," and drove away. As Humbles drove off, he crashed into the fence surrounding the parking lot, lodging the fence underneath the truck. D.J. immediately notified the New Orleans Police Department that Humbles had taken the truck.

Around 3:53 a.m., a Causeway Police Department ("CPD") officer observed Humbles driving on the Lake Pontchartrain Causeway (the "Causeway"). The officer noticed sparks coming from the truck's undercarriage and a long hose dragging from the back of the vehicle. The officer, driving in a marked police vehicle, activated his sirens and lights and began following Humbles. Humbles continued driving and turned onto I-12. The CPD officer pursued Humbles, and officers from the Louisiana State Police ("LSP") and the Livingston Parish Sheriff's Department joined the chase. Humbles recalled that he wanted to stop driving, but God allegedly told him to keep going. Around 4:46 a.m., Humbles struck two sets of spike strips set up by the LSP and stopped on the shoulder of I-12 in Livingston Parish. Law enforcement officers removed Humbles from the truck and found a .22 caliber revolver loaded with one live round.

**B.**

A grand jury in the Eastern District of Louisiana indicted Humbles on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Humbles originally pleaded not guilty. A few months before the case was set for trial, Humbles's counsel filed a motion for supplemental funds to retain an expert to evaluate Humbles's mental capacity at the time of the offense. Humbles retained Dr. Sarah DeLand, who examined him and issued a report. Dr. DeLand concluded that Humbles

"suffer[s] from bipolar disorder, characterized by episodic manic and psychotic episodes predominantly characterized by hyperreligious and grandiose themes." She noted that while Humbles was competent to proceed with a trial and understood the charge against him, his active psychosis and delusions prompted him to take the truck. Dr. DeLand added that "due to active psychosis, Mr. Humbles was not able to distinguish right from wrong at the time of the alleged offense of armed robbery of the truck." Two days after Dr. DeLand released her report, Humbles pleaded guilty.

During the guilty plea hearing, the court asked Humbles if he intended to waive his right to assert a defense of insanity at any point related to the charge of felon in possession, and Humbles replied, "Yes." Humbles's attorney interjected that "[i]t is [his] intention, however, to bring up Dr. De[L]and's report to the Court and [his] conclusions in urging a variance or a departure from the guidelines."

In the draft presentence investigation report ("PSR"), the probation officer calculated Humbles's total offense level as 25, which included the base offense level and specific offense characteristic enhancement calculated from the robbery Guideline, U.S.S.G. § 2B3.1; an enhancement for reckless endangerment under U.S.S.G. § 3C1.2; an enhancement for the value of the truck under U.S.S.G. § 2B3.1(b)(7)(B); and a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The probation officer calculated Humbles's criminal history score as a 10, which placed him in criminal history category V. One of the 10 criminal history points came from Humbles's conviction for a misdemeanor driving under the influence ("DUI") offense in Oklahoma. The probation officer stated that Humbles was represented by counsel for this conviction.

Humbles's counsel objected to the cross-reference to the robbery Guideline in U.S.S.G. § 2B3.1; the enhancements under U.S.S.G.

§§ 2B3.1(b)(7)(B) and 3C1.2; and the inclusion of his uncounseled DUI conviction in his criminal history score. The probation officer issued a revised PSR that recalculated Humbles's base offense level to remove the enhancement for the value of the truck:

- Base offense level pursuant to a cross-reference to the robbery Guideline under U.S.S.G. § 2B3.1(a): 20
- Specific offense characteristic increase under U.S.S.G. § 2B3.1(b)(2)(C) for possessing or brandishing a firearm: +5
- Enhancement for reckless endangerment under U.S.S.G. § 3C1.2: +2
- Reduction for acceptance of responsibility under U.S.S.G. § 3E1.1: -3
- Total offense level: 24

The calculation of Humbles's criminal history score (10) and his criminal history category (V) remained the same and continued to include Humbles's DUI conviction, although the probation officer corrected the description of the DUI conviction to reflect that Humbles represented himself. Humbles's DUI conviction resulted in a one-year sentence of imprisonment with 335 days suspended and twenty-five days in custody. Based on a total offense level of 24 and a criminal history category of V, the probation officer recommended a Guidelines range of 92 to 115 months of imprisonment.

After the probation officer issued the revised PSR, Humbles moved for a downward departure for mental and emotional conditions, U.S.S.G. § 5H1.3; military service, U.S.S.G. § 5H1.11; and diminished capacity, U.S.S.G. § 5K2.13. He also moved for a downward variance under the 18 U.S.C. § 3553(a) factors. Before ruling on the motion, the district court overruled Humbles's objections to the PSR, concluding in relevant part "that the [G]uidelines permit the cross-reference to robbery in this case . . . regardless of whether the defendant was charged or convicted of the crime"; Humbles's "act of fleeing and his failure to stop created a substantial risk of

injury to the multiple officers attempting to stop him, as well as others on the road as a part of the general public"; and Humbles failed to show that he did not knowingly and voluntarily waive his right to counsel for the DUI charge.

The district court adopted the PSR and calculated Humbles's Guidelines range as 92 to 115 months of imprisonment. Then the court heard testimony relating to Humbles's motion for a downward departure and variance, including testimony from Dr. DeLand. The district court denied Humbles's motion, concluding that "[t]he instant offense occurred simultaneously with a cross-referenced offense, the crime of robbery. . . . [I]t is troubling to think somehow that there can be an offense in which he's sane and simultaneously an offense in which he's not sane that's occurring at the same time." The court sentenced Humbles to 92 months of imprisonment.

Humbles timely appealed.

## II.

For preserved challenges, this court "review[s] the district court's interpretation of the Sentencing Guidelines de novo and its findings of fact for clear error." *United States v. Aderinoye*, 33 F.4th 751, 754 (5th Cir. 2022). Under the clear-error standard of review, we uphold a sentencing court's factual findings "if they are plausible in light of the record as a whole, and they will be deemed clearly erroneous only if a review of all the evidence leaves this court with the definite and firm conviction that a mistake has been committed." *United States v. Torres-Magana*, 938 F.3d 213, 216 (5th Cir. 2019) (quoting *United States v. Richard*, 901 F.3d 514, 516 (5th Cir. 2018)). This court treats a district court's "[f]actual findings regarding sentencing factors . . . [with] considerable deference." *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005) (cleaned up) (quoting *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998)). We review challenges to the substantive

reasonableness of a sentence for abuse of discretion. *United States v. Scott*, 654 F.3d 552, 555 (5th Cir. 2011).

## III.

Humbles argues on appeal that the district court erred in calculating his base offense level by cross-referencing to the robbery Guideline because the record demonstrates that he was legally insane at the time he committed the robbery. Humbles does not dispute that he took the truck. As an initial matter, the government asserts that Humbles forfeited this argument by failing to raise the objection in the district court. We need not resolve whether Humbles preserved his argument for appeal because it fails even under the more rigorous de novo and clear error standards of review. *See United States v. Martinez*, 131 F.4th 294, 315 (5th Cir. 2025).

U.S.S.G. § 2K2.1 provides the offense level for violations of § 922(g)(1). That Guidelines provision includes a recommendation to cross-reference to a different Guidelines provision to calculate the base offense level upon two conditions. First, the defendant "used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense." U.S.S.G. § 2K2.1(c)(1). Second, "the resulting offense level" after applying the cross-reference "is greater than" the offense level calculated under § 2K2.1. U.S.S.G. § 2K2.1(c)(1)(A). "Another offense" includes "any federal, state, or local offense . . . regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 cmt. n.14(C).

The probation officer determined that cross-referencing to the Guideline for robbery, U.S.S.G. § 2B3.1,[1] was appropriate because Humbles

---

[1] The probation officer followed the cross-reference under § 2K2.1(c)(1)(A) to U.S.S.G. § 2X1.1, which in turn led to the application of U.S.S.G. § 2B3.1, the relevant

possessed a firearm in connection with the robbery of the truck and Humbles received a higher base offense level under the robbery Guideline than he would have received under § 2K2.1 without the cross-reference.[2] Applying the cross-reference, the probation officer assigned Humbles a base offense level of 20 under U.S.S.G. § 2B3.1(a) plus a five-level increase under U.S.S.G. § 2B3.1(b)(2)(C).

The district court adopted the recommendations in the PSR, resulting in a Guidelines range of 92 to 115 months of imprisonment, and sentenced Humbles to 92 months. In fashioning this sentence, the district court concluded that, notwithstanding Humbles's assertion that he was not sane as to the robbery offense, it was "proper . . . to consider the cross-referenced action of robbery in connection with the charged offense to which Mr. Humbles has pleaded guilty." The district court found "it . . . troubling to think somehow that there can be an offense in which [Humbles is] sane"— the felon-in-possession crime—"and simultaneously an offense in which he's not sane"—the robbery—"that's occurring at the same time."

Assuming without deciding that the insanity defense applies to cross-references, we conclude that the district court did not err in applying the cross-reference to the robbery Guideline.

––––––––––––––––––––––

Guidelines provision for robbery. *United States v. Fannin*, 821 F. App'x 358, 359 (5th Cir. 2020) (per curiam) (involving similar steps taken from § 2K2.1(c)(1)(A) to another Guidelines provision for an uncharged offense); *United States v. Oyervides*, 546 F. App'x 362, 363–64 (5th Cir. 2013) (per curiam) (same).

[2] Had the probation officer not applied the cross-reference, Humbles's offense level under § 2K2.1 would have been 14. U.S.S.G. § 2K2.1(a)(6) (a defendant receives a base offense level of 14 if, in relevant part, the "the defendant (A) was a prohibited person at the time the defendant committed the instant offense . . . and committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person"). Humbles's offense level using the cross-reference, 25, is higher than his offense level under U.S.S.G. § 2K2.1(a)(6).

"Where a defendant asserts an insanity defense, 'the ultimate issue is whether at the time of the crime the defendant appreciated the nature and quality or the wrongfulness of his acts.'" *United States v. Eff*, 524 F.3d 712, 716 (5th Cir. 2008) (quoting *United States v. Levine*, 80 F.3d 129, 134 (5th Cir. 1996)); *see also* 18 U.S.C. § 17(a) (providing an affirmative defense when "at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts"); U.S.S.G. § 5K2.13 cmt. n.1 (defining "significantly reduced mental capacity" as an instance in which "the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful"). The defendant has the burden of proving the affirmative defense. *See United States v. Romans*, 823 F.3d 299, 321 (5th Cir. 2016).

Humbles spends much of his brief arguing that the district court failed to recognize that he can be legally sane for the possession offense but legally insane for the robbery. Relying on several cases for this argument, he compares his situation to cases involving inconsistent verdicts—where a jury acquits a defendant of one charge but not another—and double jeopardy. *United States v. Thompson*, 310 F. App'x 485, 485 (3d Cir. 2008) (the defendant was convicted of one count but found not guilty by reason of insanity on another count); *Dunn v. United States*, 284 U.S. 390, 391–92 (1932) (multi-count indictment where the jury convicted on one count and acquitted on the other two counts); *United States v. Powell*, 469 U.S. 57, 59–60 (1984) (fifteen-count indictment where the jury acquitted the defendant on some counts); *Ashe v. Swenson*, 397 U.S. 436, 446 (1970) (holding the state could not prosecute the defendant for robbery of a victim when the defendant had been previously acquitted by a jury for the same robbery but with respect

to another victim); *Langley v. Prince*, 890 F.3d 504, 513, 516–17 (5th Cir. 2018) (federal habeas case under 28 U.S.C. § 2254 involving issue preclusion under double jeopardy), *on reh'g en banc*, 926 F.3d 145 (5th Cir. 2019). Yet each of those cited cases are readily distinguishable because the government only charged Humbles with one count, and there was no determination that he was legally insane at the time he committed the felon-in-possession offense.

Moreover, the evidence that Humbles provides in support of his insanity defense—a report and testimony from Dr. DeLand—fails to satisfy his burden of proof. *Cf. United States v. Santiago*, 96 F.4th 834, 850–51 (5th Cir. 2024) (concluding the district court committed clear error when it applied a cross-reference to attempted murder without considering that the defendant met his burden of production as to self-defense). Dr. DeLand concluded that "Humbles was actively psychotic, with delusions, that led him to take the truck in New Orleans. . . . [D]ue to active psychosis, Mr. Humbles was not able to distinguish right from wrong at the time of the alleged offense of armed robbery of the truck." This conclusion does not align with the other statements Dr. DeLand made in her report or the facts surrounding Humbles taking the truck. *See Eff*, 524 F.3d at 718 ("Although [the expert] stated that [the defendant] was unable to appreciate the wrongfulness of his actions, her substantive testimony further indicates that [the defendant] was in fact able to tell right from wrong."). Dr. DeLand's statements about Humbles in her report indicate that he knew he was taking the truck, regardless of whether it was wrong. The truck provided Humbles with a means to get home as he had driven from Lafayette to New Orleans and run out of gas and money. When the truck's driver tried to pull the hose back into the truck, Humbles said "I'm going" and drove away. *See id.* ("[The defendant] knew what he was doing—setting fires . . . .").

No. 24-30364

Dr. DeLand's notes and testimony and other facts in the record indicate that Humbles appreciated the wrongfulness of his actions. Dr. DeLand explained that Humbles hesitated when he saw the truck and "felt that he was in an awkward position," but God allegedly told him to go forward. Humbles even asked God what could happen if he took the truck, indicating that he knew it was wrong. He also apologized to the truck driver when he brandished his weapon and drove away in the truck. Humbles expected to be chased after taking the truck, told God that he wanted to stop driving, and knew that multiple police officers followed him—all facts indicating that Humbles knew of the wrongful nature of his actions. Moreover, Humbles asked the police officer to forgive him when he was arrested.[3] Nothing in the record otherwise indicates that Humbles was unable to stop driving the car because of the messages he allegedly received from God.

For those reasons, the district court did not err in applying the cross-reference to the robbery Guideline when calculating Humbles's Guidelines range.

**IV.**

Humbles's counsel filed a motion for downward departure under U.S.S.G. § 5K2.13—the downward departure for diminished capacity—and

---

[3] During oral argument, Humbles's counsel argued that Humbles was apologizing to God, not the police officer. But the record belies that contention. After Humbles said "please forgive me," the officer responded, "I'm not the one who has to forgive you," and Humbles replied, "I know, because he already did." The exchange shows that Humbles thought God had already forgiven him but that he still asked the police officer for forgiveness.

for a variance in sentencing based on Humbles's mental capacity.[4] The district court denied Humbles's motion. The court reasoned that Humbles's guilty plea indicated his competency with respect to the felon-in-possession offense, and given the possession offense occurred simultaneously with the robbery, Humbles must have also been legally sane at the time of the robbery. On appeal, Humbles argues the district court's denial of the motion demonstrated that the district court did not understand the law of insanity or issue preclusion.

## A.

We first turn to the denial of the downward variance. "This court lacks jurisdiction to review a downward-departure denial *unless* . . . the district court held a mistaken belief that the Guidelines do not give it the authority to depart." *United States v. Sam*, 467 F.3d 857, 861 (5th Cir. 2006) (emphasis in original). In denying the motion, the district court specifically noted that "[w]ith respect to the offense, then, he's pleaded guilty without any defense of insanity or -- and it is troubling to think somehow that there can be an offense in which he's sane and simultaneously an offense in which he's not sane that's occurring at the same time."

"A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. The Guidelines instruct that "the court may not depart below the applicable guideline range if," in relevant part, "the facts and circumstances of the

---

[4] Humbles's motion provided other bases for a downward departure but on appeal, Humbles only seems to assert error with respect to the district court's denial of the motion under § 5K2.13.

defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." *Id.* The district court concluded that Humbles did not qualify for the § 5K2.13 downward departure because the circumstances of the offense—including Humbles brandishing a gun while taking the truck—demonstrated a need to protect the public from a serious threat of violence. The district court therefore denied Humbles's motion for a downward departure because it did not believe the facts supported a departure, not because the district court did not believe the Guidelines permitted a departure. *United States v. Serrano-Lopez*, 808 F. App'x 281, 281 (5th Cir. 2020) (per curiam) (concluding this court lacked jurisdiction where "the record reflect[ed] that the district court did not believe a further departure was warranted under the facts and circumstances of the case"); *United States v. Simpson*, 708 F. App'x 191, 192 (5th Cir. 2018) (per curiam) (same).

Humbles's argument that the district court "did not understand the law of insanity and the application of issue preclusion under *Ashe*" is unavailing. *Ashe* is easily distinguishable from the facts here. The issue in *Ashe* was "whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again." 397 U.S. at 446. After a jury acquitted a defendant of robbery with respect to one victim, the state brought charges against the same defendant for the same robbery but with respect to a different victim. *Id.* The United States Supreme Court concluded that the second trial violated the defendant's Fifth Amendment rights against double jeopardy. *Id.* at 446–47. Yet unlike in *Ashe*, double jeopardy is not implicated here because neither the court nor a jury determined that Humbles was mentally incapacitated when he committed the crime for which he pleaded guilty to, felon in possession, or with respect to the robbery. Moreover, Humbles's argument does not show that the district court harbored a

"mistaken belief that the Guidelines d[id] not give it the authority to depart." *Sam*, 467 F.3d at 861.

Accordingly, we do not have jurisdiction to review the district court's denial of the request for a downward departure.

**B.**

We review the district court's denial of Humbles's request for a downward variance—a challenge to the substantive reasonableness of his sentence—for abuse of discretion. *See Scott*, 654 F.3d at 555; *United States v. Spohr*, 582 F. App'x 298, 299 (5th Cir. 2014) (per curiam). "Appellate review for substantive reasonableness is highly deferential, because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant." *Scott*, 654 F.3d at 555 (quoting *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011)). The court applies a presumption of reasonableness to a within-Guidelines sentence, but the presumption can be rebutted "upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *Id.* (quoting *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009)).

The district court sentenced Humbles to 92 months of imprisonment. Because the sentence was within the recommended Guidelines range, it enjoys a presumption of reasonableness. *Id.*

Humbles does not rebut that presumption. He asserts that the district court did not consider his mental capacity in calculating his sentence. But the district court did consider his mental capacity and found it "troubling to think" that Humbles could plead guilty to one offense without an insanity defense but assert the defense for a separate offense that occurred simultaneously. In denying Humbles's motion for a downward variance, the

district court considered "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), noting that Humbles took a valuable truck "through the brandishing of a firearm while violating the law by having a firearm in his possession." The district court also acknowledged "[t]here's a victim to that crime that may himself be dealing with [post-traumatic stress disorder] for a lifetime now." *See id.* The district court emphasized its duty "to protect the public from such behaviors." *Id.* § 3553(a)(2)(C) (noting a district court should consider whether a sentence "protect[s] the public from further crimes of the defendant"). The district court also reviewed character letters submitted on Humbles's behalf. *See id.* § 3553(a)(1) (noting that a district court should consider "the history and characteristics of the defendant"). Lastly, the district court indicated that the sentence imposed "reflects the nature and circumstances of the offense, the seriousness of the offense, the defendant's prior criminal history, and all other relevant facts and circumstances." *Id.* § 3553(a).

For those reasons, we conclude that the district court did not abuse its discretion in denying Humbles's request for a downward variance.

## V.

Humbles challenges the two-level upward adjustment the district court applied to his offense level for reckless endangerment during flight under U.S.S.G. § 3C1.2. Humbles's counsel preserved his challenge to the district court's application of the § 3C1.2 enhancement by objecting to the PSR's application of this enhancement at sentencing.

"The determination of what constitutes reckless endangerment for the purposes of § 3C1.2 is a finding of fact that this court reviews for clear error." *United States v. Brooks*, No. 22-30390, 2023 WL 3302838, at *2 (5th Cir. May 8, 2023) (per curiam) (citing *United States v. Gould*, 529 F.3d 274, 276 (5th Cir. 2008)). The government must prove the § 3C1.2 enhancement

by a preponderance of the evidence. *See United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010).

The reckless endangerment enhancement increases a defendant's offense level by two "if the defendant: (1) recklessly; (2) created a substantial risk of death or serious bodily injury; (3) to another person; (4) in the course of fleeing from a law enforcement officer; and (5) that the flight was related to the offense the defendant is convicted of violating." *Gould*, 529 F.3d at 276; U.S.S.G. § 3C1.2. On appeal, Humbles seems to only argue that the government failed to prove the first, second, and third elements.

Humbles does not dispute the facts surrounding the police chase: He crashed through a fence when he drove the truck out of the parking lot, causing the fence to lodge underneath the truck, drag on the road, and emit sparks; he ignored multiple officers chasing him for forty-five minutes; he knew there was a hose dragging from the back of the truck; and he dodged spike strips several times until the strips pierced the truck's wheels and forced him off the road. He also drove the truck in the early hours of the morning without the headlights on. Humbles instead asserts that his actions do not amount to reckless endangerment because he did not speed and the record does not show that his flight endangered any police officer "more than a person who runs from the police and dodges around obstacles—such as empty boxes—thrown in his way."

Humbles cites four cases that upheld § 3C1.2 enhancements where the defendant exhibited conduct more egregiously reckless than his own. *United States v. Chandler*, 12 F.3d 1427, 1433–34 (7th Cir. 1994) (the defendant fled from police at high speeds through residential areas while swerving his car on a two-lane road); *United States v. Gonzalez*, 71 F.3d 819, 836–37 (11th Cir. 1996) (the defendant drove at a high speed in reverse on a residential street), *abrogated on other grounds by Davis v. United States*, 564

U.S. 229 (2011); *United States v. Reyna*, 130 F.3d 104, 112 (5th Cir. 1997) (the defendant drove at a high speed for several miles, attempted to hit a police car, and drove in the center of the road, which caused oncoming traffic to get off the road); *United States v. Washington*, 434 F.3d 1265, 1268 (11th Cir. 2006) (the defendant drove in a parking garage at a high speed).

These cases, however, do not set the minimum conduct required to apply § 3C1.2. The government need not produce evidence of high-speed chases occurring at night in an urban area or vehicles ending up in harm's way to prove the enhancement applies. *United States v. Jimenez*, 323 F.3d 320, 324 (5th Cir. 2003). In fact, in this circuit, "we have not limited the application of the enhancement to situations resulting in actual harm or manifesting extremely dangerous conduct by a defendant." *Id.* at 323. The enhancement "simply requires that the defendant be aware that his conduct creates a risk of such a nature and degree that to disregard that risk grossly deviates from the standard of care a reasonable person would exercise under similar circumstances." *Id.* at 324; U.S.S.G. § 2A1.4 cmt. n.1 (defining "reckless" consistent with our caselaw); U.S.S.G. § 3C1.2 cmt. n.2 (defining "reckless" by referring to the definition in the commentary to § 2A1.4).

The undisputed facts of this case demonstrate that Humbles was aware of the risk he created and that the risk grossly deviated from the conduct of a reasonable person. Even if Humbles drove the speed limit during the chase, he engaged police officers from three different units in a chase that lasted for forty-five minutes on the Causeway and I-12. He was aware that multiple police officers followed him and that the officers had to deploy spike strips to force him off the road and apprehend him. *Compare United States v. Sykes*, 4 F.3d 697, 700 (8th Cir. 1993) (per curiam) (cited by this court in *Jimenez*, 323 F.3d at 324) (applying the enhancement when the defendant fled in a car from people he knew to be police officers and the "officers had to force Sykes off the road to apprehend him"), *with United States v. Lackey*,

617 F. App'x 310, 314 (5th Cir. 2015) (concluding that "[d]riving well within the speed limit for approximately a half-mile before ultimately stopping and cooperating with officers, but failing to come to a complete stop at a red light before pulling over into a nearby parking lot" is insufficient to justify the enhancement), *and Gould*, 529 F.3d at 277–78 (concluding that a defendant fleeing on foot from armed officers, without additional evidence that the defendant ignored requests by the officers to stop or reacted in a threatening way, is insufficient to justify the enhancement).

Humbles also knew that a hose dragged on the road from the back of the truck and that the headlights were not on, yet he continued to drive the truck, creating a risk to other drivers on the road. *See Brooks*, 2023 WL 3302838, at \*3 (upholding the enhancement where the defendant "made a conscious and calculated decision to run into an area that carried substantial risk to other people" when he was a passenger in a car involved in a chase, fled on foot, and jumped onto a parked vehicle with people inside); *United States v. Villanueva*, No. 02-41107, 2003 WL 21355961, at \*1 (5th Cir. May 21, 2003) (per curiam) (throwing a bag of methamphetamine onto a public sidewalk while fleeing created a substantial risk to others because anyone could have picked up the drugs and ingested them). Collectively, the evidence shows more than just Humbles fleeing from police officers after being told to stop. *See Gould*, 529 F.3d at 277 (citing out-of-circuit caselaw that "mere flight" does not justify the enhancement).

For those reasons, we are not left "with the definite and firm conviction that" the district court erred in applying the § 3C1.2 enhancement. *Torres-Magana*, 938 F.3d at 216 (quotations omitted).

## VI.

Humbles next challenges the inclusion of his uncounseled misdemeanor DUI conviction in his criminal history points. Humbles's

counsel raised this objection at sentencing, preserving the challenge for appeal.

Under the Guidelines, a defendant's criminal history category is calculated by adding together the defendant's criminal history points calculated from the defendant's "prior sentence[s]." U.S.S.G. § 4A1.1. Prior sentences can include sentences imposed by guilty pleas and for misdemeanors, including DUIs. U.S.S.G. § 4A1.2(a)(1), (c), cmt. n.5. In calculating Humbles's criminal history score, the probation officer added one criminal history point for Humbles's pro se guilty plea to a misdemeanor DUI, which resulted in Humbles serving twenty-five days in custody.[5] *See* U.S.S.G. §§ 4A1.1(a)–(c), 4A1.2(b)(2) (a defendant receives one point for each prior sentence of imprisonment that was not suspended and does not exceed sixty days). The district court adopted the PSR's findings.

A defendant can collaterally attack a prior state conviction that is used to enhance his federal sentence if "the defendant alleges that the conviction was obtained in violation of [his or] her Sixth Amendment right to counsel." *United States v. Rubio*, 629 F.3d 490, 493 (5th Cir. 2010) (alteration in original) (quotations omitted). Under the Sixth Amendment, a defendant has a right to counsel at the plea-bargaining stage where the defendant faces incarceration, whether the offense was a misdemeanor or felony. *Id.* However, "[a]n uncounseled conviction that results in imprisonment is unconstitutional only if the defendant did not waive his right to an attorney." *United States v. Osborne*, 68 F.3d 94, 100–01 (5th Cir. 1995). A defendant's "waiver of the right to counsel [must] be knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

---

[5] The conviction carried a one-year sentence of imprisonment, but the court suspended 335 days.

No. 24-30364

"[S]tate law, not federal law, allocates the appropriate burden of proof." *Rubio*, 629 F.3d at 493 (quoting *Mallard v. Cain*, 515 F.3d 379, 382 (5th Cir. 2008)). Under Oklahoma law, the defendant has the burden to prove that he did not waive his right to counsel in a collateral attack on an uncounseled conviction. *Tucker v. State*, 473 P.2d 332, 335 (Okla. Crim. App. 1970); *Hanson v. State*, 716 P.2d 688, 689 (Okla. Crim. App. 1986) ("[T]he defendant has the burden of proof when making a collateral attack on a judgment and sentence for lack of assistance of counsel.").

Humbles argues that he was not provided an attorney for the plea and did not make a knowing waiver of his right to an attorney. In support of his argument, Humbles cites to the Oklahoma court's minute entry of his plea hearing, the Oklahoma court's docket sheets, and the district court's acknowledgment of the objection. But this evidence does not lend any support to Humbles's argument on appeal. *Osborne*, 68 F.3d at 101 ("[The defendant] alleges that he did not [waive his right to counsel], but has produced no evidence to support his assertion. Thus, [the defendant] did not meet his burden of proof."); *Rubio*, 629 F.3d at 494 ("When, as in this case, the federal constitutional right to counsel was firmly established in the state, a defendant must do more than merely say he was not offered counsel to satisfy his burden.").

Contrary to Humbles's argument, the minute entry seems to suggest that he was aware of his right to counsel and still chose to proceed pro se. The minute entry shows that Humbles entered into the guilty plea pro se and displays a check mark next to the following language: "The Court finds the Defendant has entered a plea free and voluntarily, Defendant understands all rights and is found competent to enter plea; the Court accepts the plea and finds the Defendant guilty as charged." In *Williams v. State*, the Court of Criminal Appeals of Oklahoma admitted evidence of a defendant's prior uncounseled misdemeanor conviction after reviewing a court minute entry

20

that indicated the defendant had been advised of his rights. 637 P.2d 867, 868 (Okla. Crim. App. 1981). In the minute entry, "the trial judge noted that he advised the appellant of his constitutional rights and that the appellant stated he understood the charge and his rights, and thereafter he entered his plea of guilty." *Id.* Similarly, here, the district court judge noted in the minute entry that Humbles understood his rights and still chose to plead guilty.

Moreover, "[t]he factors that courts are to consider in assessing the voluntariness of a waiver of counsel—including the stage of the proceedings, the defendant's background, age, experience, and the straightforwardness of the charge—also weigh in favor of finding that" Humbles's waiver was knowing and voluntary. *United States v. Pino Gonzalez*, 636 F.3d 157, 160 (5th Cir. 2011). The waiver issue arose during the plea agreement and hearing stage. *Id.* at 161 (waiver arising during plea hearing weighs in favor of finding the waiver knowing and voluntary). Although Humbles was only twenty-two years old at the time he pleaded guilty to the DUI, he had previously been arrested four times, represented by counsel each time he was charged, and had served time. *Id.* at 160 (concluding the following facts weigh in favor of finding waiver knowing and voluntary: a thirty-four-year-old defendant served seven years for a previous conviction, in which he was represented by counsel). Humbles's DUI was "a relatively straightforward crime," and although the conviction came with a one-year sentence, Humbles only served twenty-five days in custody. *Id.* at 160–61 (categorizing "unlawful entry into an enclosed place" as "a relatively straightforward crime" with a brief sentence—thirty days in prison which the defendant had already served); *United States v. Rea-Tapia*, 134 F. App'x 711, 714–15 (5th Cir. 2005) (per curiam) (categorizing illegal entry as a "relatively straightforward crime . . . carrying a correspondingly brief sentence (180 days in prison)"). Humbles also had a bachelor's degree. *Pino Gonzalez*, 636 F.3d at 161 (weighing a ninth-

grade education in favor of finding defendant's waiver knowing and voluntary).

For those reasons, we conclude the district court did not err in including Humbles's pro se DUI conviction in calculating his criminal history. *Osborne*, 68 F.3d at 100 ("If a prior conviction has not been held constitutionally invalid, then a district court has the discretion to include the conviction in calculating the sentence.").

## VII.

Humbles urges this court to reassign his case to a different judge upon remand because of statements the district court made as to Humbles's mental capacity with respect to the robbery offense. Because we conclude that the district court did not commit reversible error and we do not remand the case to the district court, we need not reach the issue of reassignment. *United States v. Stanford*, 883 F.3d 500, 516 (5th Cir. 2018) ("Because we conclude that this court's supervisory power to reassign a matter is coterminous with the necessity of a remand, we need not reach the issue [of reassignment].").

## VIII.

Given the foregoing reasons, we AFFIRM the judgment of the district court and DENY Humbles's request to reassign the case.